IN RE INTEREST OF DAVID C., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. DAVID C., APPELLEE,
AND NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES,
INTERESTED PARTY, APPELLANT.
572 N.W. 2d 392

Filed November 25, 1997.    Nos. A-97-576, A-97-691, A-97-728.

Don Stenberg, Attorney General; Royce Harper; and Sam Kaplan, Special Assistant Attorney General, for appellant.

No appearance for appellee David C.

HANNON, IRWIN, and SIEVERS, Judges.

HANNON, Judge.

This opinion disposes of three appeals involving the disposition of one minor, David C., who had previously been adjudicated as a juvenile under Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 1996) and placed on probation. Upon the motion of the county attorney to revoke David's probation, the juvenile court committed him to the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska, a facility now operated by the Office of Juvenile Services (OJS), which has recently been made a part of the newly created Nebraska Department of Health and Human Services (Department). In the order of commitment, the juvenile court announced that it would retain jurisdiction over David subject to completion of treatment at the YRTC and that further disposition would take place upon completion of such treatment. The juvenile court also ordered OJS to prepare a treatment and placement plan and submit it to the court prior to David's release from the YRTC, to notify the court prior to David's release, to submit monthly progress reports to the court, and to immediately report to the court any temporary change in David's placement. The Department appealed from this order in case No. A-97-576, contending that the juvenile court could not retain jurisdiction over David once it had committed him to OJS. After that appeal was perfected, the juvenile court entered two additional orders concerning David's temporary disposition. Each of these has been separately appealed and has been combined by this court in the instant case.

We now conclude that under the present Nebraska Juvenile Code, Neb. Rev. Stat. § 43-245 et seq. (Reissue 1993 & Cum. Supp. 1996), a juvenile court's jurisdiction over an adjudicated minor continues after he or she is committed to a YRTC. However, we further conclude that the juvenile court does not have jurisdiction over OJS in placing, managing, or discharging the committed juvenile.

In any event, we find plain error in the juvenile court's failure to adequately advise David of his right to counsel before accepting his admission that he violated the terms of his probation. We therefore reverse the juvenile court's order and remand the cause with directions to vacate the order and to entertain new proceedings on the county attorney's motion alleging that David violated the terms of his probation. Our conclusion renders the two subsequent appeals moot.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 6, 1996, the Dodge County Attorney filed a petition in juvenile court alleging that David had committed theft by receiving stolen property of a value of less than $200, a Class II misdemeanor, in violation of Neb. Rev. Stat. § 28-517 (Reissue 1995). David admitted the allegations, and the court found that he was a juvenile as defined in § 43-247(1). The court placed David on indefinite probation and further placed him with his parents under the supervision of the probation office. On January 23, 1997, the court ordered that David be evaluated by the YRTC in Geneva, Nebraska, for a period of time not to exceed 30 days. On March 10, the court modified David's probation and placed him with his grandparents.

Later, the county attorney filed a motion alleging that David had violated the terms of his probation by breaking curfew and by failing to obey his grandparents. When that motion came on for hearing on April 30, 1997, David admitted the allegations, but the record shows that David did not have counsel at the time and that the court did not adequately advise him of his right to counsel as required by §§ 43-286(4)(b) and 43-272(1). The record reveals that counsel was appointed for David on June 4.

Upon David's admission, the juvenile court committed him to the YRTC-Kearney. Because the instant appeal centers around the court's order of commitment, we set forth its relevant provisions:

> 1. It is in the best interests of the juvenile, the family, and the community, that the custody of the juvenile shall be committed to the Nebraska Health and Human Services, Office of Juvenile Services for placement and treatment at the [YRTC-Kearney], as permitted under

Section 43-247(1). In order to maximize local determination and to ensure the achievement of measurable outcome, the Dodge County Juvenile Court shall retain jurisdiction subject to completion of treatment at the [YRTC-Kearney].

2. Further disposition shall take place upon the juvenile's completion of treatment at the [YRTC-Kearney].

3. The Nebraska Health and Human Services, Office of Juvenile Services shall submit a Treatment and Placement Plan to the Court prior to his release from the [YRTC-Kearney].

4. The [YRTC-Kearney] shall notify the Dodge County Juvenile . . . Court prior to [David's] parole/release in order that arrangements can be made for transportation to the Dodge County Juvenile Court for further disposition. . . .

5. The [YRTC-Kearney] shall submit monthly progress reports to the Court.

. . . .

Any temporary change in placement of the juvenile by the Nebraska Health and Human Services, Office of Juvenile Services must be reported to the Court immediately.

On May 30, 1997, the Department appealed the juvenile court's order. This is the subject of the appeal in case No. A-97-576. After the Department filed its appeal, the juvenile court entered two more orders concerning the placement and management of David. These orders are the subjects of the appeals in cases Nos. A-97-691 and A-97-728.

On June 26, 1997, the Department filed a motion requesting this court to order the juvenile court to cease and desist from entering further dispositional orders or other substantive orders during the pendency of the appeal and further, to direct that OJS be given the latitude and discretion, pursuant to statute, to determine the appropriate placement for David without further interference from the juvenile court. The cases were consolidated by this court upon the Department's motion. We concluded that David was in no immediate danger and that without a resolution of the jurisdictional issue in case No. A-97-576, a temporary order stood a good chance of doing more harm than good.

Knowing that no further briefs would be filed, we set the case for argument on the next argument date and resolved to dispose of the case as quickly as proper consideration of the difficult questions presented would allow.

## ASSIGNMENTS OF ERROR

The Department contends that the court erred in its order of April 30, 1997, in the following respects: (1) in requiring David to return to juvenile court for further disposition after he was released on parole from the YRTC-Kearney, (2) in professing to retain jurisdiction of the matter subject to David's completing treatment at the YRTC, (3) in requiring OJS to submit a treatment and placement plan to the court prior to David's release and to share information with the local probation office, (4) in requiring OJS to notify the court prior to David's release for purposes of further disposition, and (5) in requiring without any statutory authorization that OJS submit a monthly progress report to the court.

▮ The Department also contends that the juvenile court's actions were unconstitutional because they violated the separation of powers clause, Neb. Const. art. II, § 1, and because by requiring David to return to juvenile court after having been committed to the YRTC, they subjected David to double jeopardy, in violation of U.S. Const. amend. V and Neb. Const. art. I, § 12. We do not consider the latter argument, because the defense of double jeopardy must be asserted and proved, and in the absence of such issue being raised by the pleadings, the defense is waived. See *State v. Carter*, 205 Neb. 407, 288 N.W.2d 35 (1980). See, also, *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987). The Department failed to raise the issue in its pleadings, and, moreover, any such claim would be David's.

Except in the most unusual of cases, for a question of constitutionality to be considered on appeal, it must have been properly raised in the trial court, and if not so raised, it will be considered to have been waived. *State v. Criffield*, 241 Neb. 738, 490 N.W.2d 226 (1992) (separation of powers argument not presented to, considered by, or ruled upon by district court was deemed waived). In the instant case, neither constitutional argu-

ment was presented to, considered by, or ruled upon by the juvenile court. Additionally, to the extent the Department's arguments concern the constitutionality of statutes, this court has no jurisdiction to make such determinations. However, this court may, when necessary to the decision of the case before us, determine whether a constitutional question has properly been raised. *Bartunek v. Geo. A. Hormel & Co.*, 2 Neb. App. 598, 513 N.W.2d 545 (1994). See, also, Neb. Rev. Stat. § 24-1106 (Reissue 1995). Thus, these issues are not properly before us.

## STANDARD OF REVIEW

■ In reviewing questions of law, an appellate court in proceedings under the Nebraska Juvenile Code reaches a conclusion independent of the lower court's ruling. *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997); *In re Interest of Jeffrey R.*, 251 Neb. 250, 557 N.W.2d 220 (1996). In addition, statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of Jeffrey R., supra.*

## REVIEW OF APPLICABLE STATUTES

The Department asserts that when a juvenile court commits a juvenile to a YRTC, the court loses jurisdiction over that juvenile, and, consequently, any orders issued by the court after commitment are void. Although we are not favored with a brief in opposition to the Department's position, it is nevertheless clear that the issues of this appeal involve interpretation of the statutes which control the jurisdiction of the juvenile court over juveniles adjudicated under § 43-247 in light of those statutes which provide for the management of the YRTC's.

### Jurisdiction of Juvenile Court.

Section 43-247 provides, in relevant part, that "the juvenile court's jurisdiction over any individual adjudged to be within

the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." Section 43-295 further provides that, except in the case of adoption, "the jurisdiction of the court shall continue over any juvenile brought before the court or committed under the Nebraska Juvenile Code . . . ." Thus, it is difficult to imagine what words the Legislature could have used to make it more clear that the jurisdiction of the juvenile court over an adjudicated juvenile continues even after the juvenile is committed under the code.

*Commitment to OJS.*

On the other hand, the statutes seem to be equally clear that a juvenile committed to one of the YRTC's is placed under the control of OJS. See § 43-286(2). Neb. Rev. Stat. § 83-925.12 (Cum. Supp. 1996) was newly adopted by 1996 Neb. Laws, L.B. 1044, and provides that whenever any juvenile is committed to OJS or to any facility operated by OJS, the juvenile shall be deemed "sentenced or committed" to OJS. See § 83-925.12(1). It then goes on to provide:

> The Juvenile Services Director may designate as a place of confinement or placement of a juvenile . . . any available, suitable, and appropriate residence facility or institution, whether or not operated by the state, or other placement appropriate to the needs of the juvenile, whether or not operated by the state, and may at any time transfer such juvenile from one place of placement to another . . . .

§ 83-925.12(2).

Additionally, as amended by § 956 of L.B. 1044, Neb. Rev. Stat. § 83-472 (Cum. Supp. 1996) now provides (with additions noted by underscoring and deletions by striking out) as follows:

> (1) Every juvenile committed to the Youth Rehabilitation and Treatment Center-Kearney or Youth Rehabilitation and Treatment Center-Geneva or other facility or placement of the Office of Juvenile Services under sections 83-465 to 83-470 pursuant to the Nebraska Juvenile Code or subsection (3) of section 29-2204 shall remain there until he or she attains the age of nineteen unless sooner paroled or legally discharged.

(2) The Office of Juvenile Services shall adopt and promulgate rules and regulations for the promotion, parole, and final discharge of juveniles such as shall be considered mutually beneficial for the Office of Juvenile Services and facilities under its direction ~~institution~~ and the juveniles.

(3) The discharge of any juvenile pursuant to the rules and regulations or upon his or her attainment of the age of nineteen shall be a complete release from all penalties incurred by conviction or adjudication of the offense for which he or she was committed.

Before 1994, the YRTC's were clearly under the control of the Division of Juvenile Services of the Department of Correctional Services. See, e.g., Neb. Rev. Stat. §§ 83-925 to 83-930 (Reissue 1987 & Supp. 1993). In 1994, the agency's name was changed to the Office of Juvenile Services, but it nevertheless remained part of the Department of Correctional Services. See, Neb. Rev. Stat. §§ 83-925.02 and 83-925.04 (Reissue 1994); 1994 Neb. Laws, L.B. 988, §§ 10 and 12. The enactment of 1996 Neb. Laws, L.B. 1044, much of which became effective January 1, 1997, made substantial changes in several departments in the executive branch of state government. Among other changes, OJS, which had long been a part of the Department of Correctional Services (or the predecessors to that department), was transferred for administration purposes to the newly organized Department of Health and Human Services, but its name, OJS, remained the same. See, Neb. Rev. Stat. § 81-3006 (Cum. Supp. 1996); Neb. Rev. Stat. § 83-925.02 (Cum. Supp. 1996) (creating, within the Department, OJS). See, also, Neb. Rev. Stat. § 83-925.01 et seq. (Reissue 1994 & Cum. Supp. 1996). However, L.B. 1044 did not change the fact that OJS was to administer the YRTC's and to supervise and coordinate juvenile parole and aftercare services. See § 83-925.05. L.B. 1044 also transferred the Department of Social Services (DSS) to the Department of Health and Human Services. See § 81-3006.

*Statute Governing Placement or Commitment of Juveniles.*

L.B. 1044 necessarily amended the statutes governing placement and commitment of juveniles by the juvenile court to

accommodate the new names given to the executive agencies. We will display the sections of L.B. 1044 as they are recorded in 1996 Neb. Laws so the changes can be easily observed.

Section 43-286 provides where a juvenile court may place or commit a juvenile once he or she is adjudicated under subdivisions (1), (2), (3)(b), or (4) of § 43-247. In significant part, it provides:

(1) The court may . . . :

. . . .

(c) Cause the juvenile to be placed in a suitable family home or institution, subject to the supervision of the probation officer. If the court has committed the juvenile to the care and custody of the ~~Department of Social Services~~ Department of Health and Human Services, the department shall pay [certain costs].

. . . .

(2) Except as provided in section 43-287, the court may commit such juvenile to ~~the care and custody of~~ the Office of Juvenile Services, ~~or the Department of Correctional Services,~~ but a juvenile under the age of twelve years shall not be committed . . . unless [certain conditions exist].

. . . .

(4) . . . .

. . . .

(e) If the juvenile is found by the court to have violated the terms of his or her probation, the court may . . . in the case of the juvenile adjudicated to be within the definitions of subdivision (3)(b) of section 43-247, the court . . . may in addition commit such juvenile to the ~~Department of Public Institutions, the~~ Office of Juvenile Services, ~~or the Department of Correctional Services~~ under section 43-287 . . . .

We observe that in L.B. 1044, the name "Office of Juvenile Services" was substituted for the name "Department of Correctional Services" or the name "Department of Public Institutions," and the name "Department of Health and Human Services" was substituted for the name "Department of Social Services." We also observe that the phrase "care and custody" was stricken from subsection (2), where the commitment of a

juvenile to OJS is mentioned, but also that this phrase was retained in subdivision (1)(c), which requires the Department to pay certain costs. Additionally, we note that §§ 43-285 and 43-284 retain the word "care" or the phrase "care and custody" with reference to the Department or other caregivers.

*Statutes Concerning Management of Juveniles.*

Section 43-285 provides the only statutory basis for the juvenile court to control a juvenile after disposition. L.B. 1044 amended only the introductory paragraph, which now provides:

> When the court awards a juvenile to the care of the ~~Department of Social Services~~ Department of Health and Human Services, an association, or an individual in accordance with the Nebraska Juvenile Code, the juvenile shall, unless otherwise ordered, become a ward and be subject to the guardianship of the department, association, or individual to whose care he or she is committed. Any such association and the department shall have authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it.

The latest version of § 43-285 is a page and a half in length and difficult to summarize. Our summary of § 43-285 focuses on the power and authority of the department, association, or individual to whom the care of an adjudicated juvenile is given (hereinafter caregiver) and the juvenile court's power over that caregiver. As provided in the above quote, the Department and any association, but apparently not an individual, have authority with the consent of the court to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it. Of importance in the instant case, § 43-285(3) also provides that the caregiver shall (1) within 30 days, file a report with the court stating the location of the juvenile's placement and the needs of the juvenile in order to effectuate the purposes of § 43-246(1); (2) file a report with the court once every 6 months or at shorter intervals if ordered by the court or deemed appropriate by the caregiver; and (3) file a report and notice of placement change

with the court and send copies of the notice to all interested parties at least 7 days before the placement of the juvenile is changed.

Section 43-285 further provides that the court can consent to the caregiver's determination of care, placement, et cetera. Apparently, in order to enable the court to exercise that power, § 43-285 provides that the court can (1) determine placement in the first instance, (2) order a hearing to review a change upon its own motion or upon the objection of a party, (3) stay a change until the completion of the hearing, and (4) approve a change of placement on an ex parte basis. (The Department can make an immediate change in placement without court approval where the juvenile is in a harmful or dangerous situation.)

## ANALYSIS

After comparing the aforementioned statutes, several observations are in order.

*Continuing Jurisdiction of Juvenile Court.*

Sections 43-247 and 43-295 clearly give the juvenile court jurisdiction of an adjudicated minor until the juvenile reaches his or her majority, unless the minor is adopted or the court discharges the individual. Somewhat conversely, § 83-472 provides that a juvenile that has been committed to OJS shall remain there until he or she reaches age 19 unless sooner paroled or legally discharged. Essentially, the Department now contends that David's commitment to OJS amounts to a discharge by the court under § 43-247. We observe that it is equally possible that an order removing a minor from OJS, by a juvenile court with jurisdiction under § 43-247, would serve as a legal discharge of that minor under § 83-472.

In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *In re Interest of Jeffrey R.*, 251 Neb. 250, 557 N.W.2d 220 (1996). In discerning the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it

being our duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Id.*

The relevant language in § 83-472 has been in place since the initial version of the statute was enacted in 1879. See 1879 Neb. Laws, p. 416, § 11. In *Brown v. Doeschot*, 185 Neb. 293, 175 N.W.2d 280 (1970), the juvenile court found that the juvenile was a delinquent and committed him to the care and custody of the Department of Public Institutions, see Neb. Rev. Stat. § 43-210(2) (Reissue 1968) (juvenile court may commit delinquent child to care and custody of Department of Public Institutions), at what was then known as the Boys' Training School at Kearney (now YRTC-Kearney). See Neb. Rev. Stat. § 83-463 et seq. (Reissue 1966 & Cum. Supp. 1967). Soon thereafter, the court suspended the commitment and placed the juvenile in the temporary custody of the Omaha Home for Boys. Upon a motion filed on behalf of the State by the assistant chief probation officer of the juvenile court, which alleged that the juvenile had absented himself from the Omaha Home for Boys, the court terminated the responsibility of the Omaha Home for Boys and committed the juvenile back to the Department of Public Institutions, Division of Corrections, at the Boys' Training School at Kearney. On appeal, the Nebraska Supreme Court affirmed the actions of the juvenile court. The court found that the Juvenile Court Act, see Neb. Rev. Stat. § 43-201 et seq. (Reissue 1968), specifically § 43-209 ("[e]xcept [cases involving termination of parental rights or adoption,] the jurisdiction of the court shall continue over any child . . . committed under the provisions of this act . . . ."), gave the juvenile court continuing jurisdiction over any child brought before the court or committed under the provisions of the act. Moreover, the court stated that the juvenile court has "broad discretion as to the disposition of a child found to be delinquent." *Brown v. Doeschot*, 185 Neb. at 295, 175 N.W.2d at 281.

While the Juvenile Court Act has since been repealed and replaced with the Nebraska Juvenile Code, see Neb. Laws 1981, L.B. 346, and § 43-245 et seq. (Supp. 1981), the language previously found in § 43-209 giving juvenile courts continuing jurisdiction is now found in § 43-295. Although juvenile courts now commit juveniles to OJS rather than the Department of

Public Institutions (or, for that matter, the Department of Corrections or the Department of Correctional Services), the effect of *Brown v. Doeschot, supra*, is still applicable—a commitment to a YRTC does not terminate the juvenile court's jurisdiction. This is consistent with the view of legal commentators:

> Where the court retains its jurisdiction over a minor found to be delinquent, it may, in the exercise of its discretion, amend or revoke former orders, as to the care, custody or probation of the minor, and the court may entirely terminate its jurisdiction when it is satisfied that further supervision is unnecessary. . . .
>
> Accordingly, the court may commit a minor who has been previously granted probation, if he engages, while on probation, in delinquent conduct, or commits an offense. Also, the court may change the place of commitment whenever the circumstances require it, as where the minor fails, after a reasonable period of time, to make a reasonable adjustment at the institution to which he has been committed.

43 C.J.S. *Infants* § 82 at 302 (1978). See, also, *In re Glen J.*, 97 Cal. App. 3d 981, 159 Cal. Rptr. 148 (1979) (juvenile court's modification of commitment upheld).

Based on the foregoing authorities, it would appear that under § 43-247, § 43-295, and *Brown v. Doeschot, supra*, the juvenile court retains jurisdiction over minors committed to OJS without an order of commitment specifically so providing. We conclude, therefore, that the juvenile court's commitment of a juvenile to a YRTC does not constitute a discharge within the meaning of § 43-247, and, therefore, that the juvenile court retains jurisdiction. This is not to say that a juvenile court may exercise such jurisdiction at the whim of the judge, but only after a proposed change is brought before the court with appropriate pleadings, notice, and a hearing with evidence which justifies a change in placement.

### Court-Ordered Reports from OJS.

The Department also contends that the juvenile court erred in requiring OJS to submit treatment and placement plans to the court, to submit monthly progress reports to the court, and to notify the court prior to releasing the juvenile. We observe that

there is an important distinction between a juvenile court's continuing to exercise jurisdiction over a juvenile and a juvenile court's directing OJS in its management of a juvenile that has been committed to OJS.

It is clear that OJS may adopt and promulgate rules and regulations to carry out its duties. § 83-925.09; § 83-472. See, generally, § 83-925.01 et seq. Although § 83-925.12 provides OJS with the authority to designate the place of confinement of juveniles committed to it, the only statute which can be interpreted to allow the juvenile court to have a say in the management of a juvenile committed to OJS is § 43-285. As set forth above, § 43-285 clearly allows the juvenile court to require the Department to file reports concerning location of placement and notice of placement changes. It further allows the court on its own motion to order a hearing to review a change in placement. The question before us now is whether § 43-285 applies to OJS because it is a part of the Department or whether it applies only to the Department exclusive of OJS.

The history of § 43-286 provides some indication that the Legislature intended to give juvenile courts such powers only when the Department was acting in a capacity other than as OJS. Prior to 1989, § 43-286 allowed juvenile courts to commit juveniles who had been adjudicated under § 43-247(1), (2), (3)(b), or (4) to the "care and custody" of the Department of Correctional Services, see § 43-286 (Reissue 1988), but it did not provide for the placement of such juveniles with DSS. See, e.g., *In re Interest of C.G. and G.G.T.*, 221 Neb. 409, 377 N.W.2d 529 (1985). In 1989, the Legislature enacted 1989 Neb. Laws, L.B. 182, effective August 25, 1989, which amended § 43-286 to provide that juveniles adjudicated under § 43-247(1), (2), (3)(b), or (4) could be committed to the care and custody of DSS. See § 43-247(1)(c) (Reissue 1993). Because OJS was a part of the Department of Correctional Services, a separate and distinct agency from DSS, it could not be argued that § 43-285 gave the juvenile court the power to manage juveniles committed to OJS by giving the court power over juveniles placed with DSS. In 1996 Neb. Laws, L.B. 1044, the Legislature struck the words "care and custody" when providing for commitment to OJS but kept them when referring to the Department.

The introducers' statement of intent to L.B. 1044 and the testimony of the witnesses before the Health and Human Services Committee show that in enacting the bill, the proponents and the Legislature were preoccupied with reorganizing a substantial part of the executive branch of state government and were not at all interested in modifying the powers of the juvenile courts. We find no mention of the juvenile courts in any of the recorded discussion on L.B. 1044. In the floor debate, Senator David Bernard-Stevens asked a question about the changes the bill was making in OJS. Senator Don Wesely answered in part:

> We feel that Corrections has too long been outside of the health and human service area in trying to meet the needs of families that are in trouble. And so [we are] trying to bring them out of Corrections and into this new entity and merge them together so they can jointly address problems . . . . *We have taken all existing language, not tried to recreate, add or subtract to it, but simply realign it administratively. . . . So in fact there should be nothing in this bill or the committee amendment that has any new direction in it.*

(Emphasis supplied.) Floor Debate, 94th Leg., 2d Sess. 10982 (Feb. 12, 1996).

We therefore conclude that the portion of the court's order requiring OJS to submit a treatment and placement plan prior to David's release, to notify the court before release or parole, to report any change in placement to the court, or to submit monthly progress reports is beyond the powers of the juvenile court. If we were to conclude otherwise, we would essentially be holding that the Legislature, in reorganizing the executive branch of state government, intended to substantially increase the power of the juvenile court. That clearly was not the case.

At first blush, it may seem inconsistent to hold that the juvenile court retains jurisdiction of a juvenile committed to a YRTC and, at the same time, hold that the court does not have the power to obtain the information necessary to enter orders exercising that jurisdiction. First of all, we point out that we are not changing the system that has apparently existed for many years. Second, by their very nature, courts are not administrative organizations.

*David's Right to Counsel.*

Lastly, we note that at the April 30, 1997, hearing on the State's motion to revoke probation, David was not adequately informed of his right to counsel. Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.* Pursuant to §§ 43-286(4)(b) and 43-272(1), on a motion to revoke probation, the court must (1) advise the juvenile and his or her parent or guardian of their right to retain counsel, (2) inquire of the juvenile and his or her parent or guardian as to whether they desire to retain counsel, and (3) inform the juvenile and his or her parent or guardian of the juvenile's right to counsel at county expense if none of them is able to afford counsel. The court failed to comply with the aforementioned statutes, and therefore, we conclude that the court erred in failing to advise David of his rights. Thus, the April 30 order, which is based upon David's admission, must be reversed.

We observe that at the hearing on the motion to revoke David's probation, the judge did not revoke David's probation either verbally or in writing. The bill of exceptions reveals that in response to a question concerning the status of David's probation, the judge responded, "Well, the probation, as I indicated, is an ongoing disposition." The court further stated:

> And so I've acknowledged that he is in violation of his ongoing dispositional probation. The placement will be with the Youth Rehabilitation Treatment Center. The Court will be having ongoing jurisdiction. At the conclusion of the treatment at Kearney, then they will be submitting a plan to the Court for further placement, and then we'll be coming back into this Court.

It is clear that the court intended to commit David to the YRTC without actually revoking his probation. We can find no statutory basis for this procedure. Section 43-286 provides for the possible dispositions that a court may make, including con-

tinuing the disposition portion of the hearing and (1) placing the juvenile on probation subject to the supervision of a probation officer; (2) permitting the juvenile to remain in his or her own home, subject to the supervision of the probation officer; (3) placing the juvenile in a suitable home or institution or with the Department; or (4) committing him or her to OJS. Section 43-286 provides no authority for a court to place a juvenile on probation under the care of OJS. Section 43-286(4)(e) provides that if the court finds that the juvenile violated the terms of his or her probation, the court may modify the terms and conditions of the probation order, extend the period of probation, or enter "any order of disposition that could have been made at the time the original order of probation was entered . . . ." The court could not have originally entered an order providing for probation with commitment to YRTC, and it necessarily follows that the court could not enter such an order upon finding that the juvenile had violated the terms of his or her probation. The attempt to continue probation while committing David to a YRTC would also require a reversal of the order of April 30.

*Additional Orders.*

In its brief, the Department argues that once it appealed the April 30, 1997, order, the juvenile court lost jurisdiction to enter any further orders, specifically the June 4 order and the June 11 order. Briefly, the court, in these latter two orders, continued to control the management, supervision, and placement of David. With regard to the most recent order, David was removed from the YRTC and placed with his mother.

There appears to be a conflict between § 43-2,106, which provides that the county court shall continue to exercise supervision over the juvenile until a hearing is had in the appellate court and the appellate court enters an order making other disposition, and *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997), which holds that once an appeal has been perfected to an appellate court, the trial court is without jurisdiction to hear a case involving the same matter between the same parties. Though discussed in its brief, the Department failed to assign such as error. Errors which are argued but not assigned will not be considered by an appellate court. *Boettcher*

*v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997). Moreover, because we reverse the district court's order for failure to adequately advise David of his right to counsel, these issues are moot.

## CONCLUSION

We conclude that the juvenile court exceeded its statutory authority in its order of April 30, 1997, when it attempted to control OJS' management of David. However, because David was not adequately advised of his right to counsel, the same order must be reversed and the cause remanded with directions to vacate the order and to hold another hearing on the county attorney's motion to revoke probation. With regard to the succeeding two orders, cases Nos. A-97-691 and A-97-728, they have been rendered moot and are therefore dismissed.

JUDGMENT IN NO. A-97-576 REVERSED, AND CAUSE REMANDED WITH DIRECTIONS.
APPEAL IN NOS. A-97-691 AND A-97-728 DISMISSED.