672 N.W.2d 24 (2003)
267 Neb. 78
In re Interest of TAMANTHA S., a child under 18 years of age.
State of Nebraska, Appellee,
v.
Department of Health and Human Services, Office of Juvenile Services, Appellant.
No. S-03-256.
Supreme Court of Nebraska.
December 5, 2003.
*25 John M. Baker, Special Assistant Attorney General, for appellant.
James S. Jansen, Douglas County Attorney, Paul J. Sullivan, Matthew R. Kahler, and Kelli Wiehl, Senior Certified Law Student, for appellee.
HENDRY, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
On November 26, 2002, Tamantha S. was adjudicated by the separate juvenile court of Douglas County as being within the scope of Neb.Rev.Stat. § 43-247 (Cum.Supp.2002) and placed in the custody of the Department of Health and Human Services, Office of Juvenile Services (OJS). Following a February 4, 2003, dispositional hearing, on February 5, the juvenile court ordered, inter alia, that Tamantha be "placed under the Conditions of Liberty contract (incorporated herein as if set forth in full) for a period of one year unless sooner extended or revoked for cause by the court." OJS appeals from the juvenile court's dispositional order and claims that the juvenile court did not have authority to order a "Conditions of Liberty" contract for a prescribed period of time. Finding no error in the juvenile court's order of February 5, we affirm.

STATEMENT OF FACTS
On or about October 4, 2001, Tamantha was expelled from a middle school in Omaha after she assaulted a security guard at the school. As a result of the assault, on June 7, 2002, a petition was filed in the separate juvenile court of Douglas County alleging that Tamantha came within the provisions of § 43-247(1), in that she had violated a state law or municipal ordinance. Tamantha was arraigned on November 25. At the November 25 hearing, she admitted the allegations in the petition. The juvenile court held a dispositional hearing on February 4, 2003, at which time the court determined that Tamantha's best interests were served by placing her in the custody of OJS and by allowing her inhome placement. *26 In its February 5 order, the court further ordered that Tamantha comply with the terms of the Conditions of Liberty contract "for a period of one year unless sooner extended or revoked for cause by the court." OJS appeals from the juvenile court's dispositional order.

ASSIGNMENT OF ERROR
OJS claims the juvenile court erred by ordering Tamantha to remain in OJS' custody under a Conditions of Liberty contract for a prescribed period of time.

STANDARD OF REVIEW
Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. In re Estate of Breslow, 266 Neb. 953, 670 N.W.2d 797 (2003).

ANALYSIS
Initially, we note that the record does not contain a copy of the Conditions of Liberty contract. Based upon the parties' briefs and oral argument, we understand that the contract was an agreement between Tamantha and OJS and that it did not include a term limiting its duration. We further note that both parties understand that the juvenile court's dispositional order placed a 1-year time limit on the contract. For purposes of this opinion, we accept the parties' description of the contract and their construction of the juvenile court's order.
OJS claims on appeal that the juvenile court's order improperly deprives OJS of the power to discharge the juvenile from OJS. At issue in this appeal is OJS' assertion that the Legislature, in drafting Neb.Rev.Stat. § 43-408 (Cum.Supp.2002), intended to give OJS the sole responsibility and the sole authority over the discharge of juveniles committed to OJS. Presently, § 43-408 provides, in relevant part, as follows:
(2) The committing court ... shall continue to maintain jurisdiction over any juvenile committed to the Office of Juvenile Services until such time that the juvenile is discharged from the Office of Juvenile Services. The court shall conduct review hearings every six months, or at the request of the juvenile, for any juvenile committed to the Office of Juvenile Services who is placed outside his or her home, except for a juvenile residing at a youth rehabilitation and treatment center. The court shall determine whether an out-of-home placement made by the Office of Juvenile Services is in the best interests of the juvenile, with due consideration being given by the court to public safety. If the court determines that the out-of-home placement is not in the best interests of the juvenile, the court may order other treatment services for the juvenile.
(3) After the initial level of treatment is ordered by the committing court, the Office of Juvenile Services shall provide treatment services which conform to the court's level of treatment determination. Within thirty days after making an actual placement, the Office of Juvenile Services shall provide the committing court with written notification of where the juvenile has been placed. At least once every six months thereafter, until the juvenile is discharged from the care and custody of the Office of Juvenile Services, the office shall provide the committing court with written notification of the juvenile's actual placement and the level of treatment that the juvenile is receiving.
On appeal, OJS asserts that a "plain reading of Neb.Rev.Stat. § 43-408" grants OJS and not the juvenile court the authority to *27 discharge a juvenile from the care and custody of OJS. Brief for appellant at 9. OJS claims that when the juvenile court imposed the 1-year time limit on the Conditions of Liberty contract, the juvenile court "impermissibly intrude[d] upon the legislative grant of authority to [OJS by] dictating to OJS how and when to discharge a committed youth from OJS." Id. at 6.
In support of its argument, OJS relies on In re Interest of David C., 6 Neb.App. 198, 572 N.W.2d 392 (1997). In In re Interest of David C., the Nebraska Court of Appeals ruled, inter alia, under the facts of that case, that the juvenile court retained jurisdiction of the juvenile after his placement at the Youth Rehabilitation and Treatment Center in Kearney, Nebraska, but that the juvenile court had exceeded its statutory authority "when it attempted to control OJS' management of [the adjudicated child]." Id. at 215, 572 N.W.2d at 402. In particular, the Court of Appeals concluded that the juvenile court's order, which required OJS to submit placement plans to the court, to report any change in the juvenile's placement to the court, and to notify the court prior to the juvenile's release, exceeded the powers of the juvenile court. Although OJS urges us to rely on In re Interest of David C., we note that subsequent to the filing of In re Interest of David C., the Nebraska Legislature amended the juvenile code and that those amendments are controlling. See, e.g., § 43-408. Thus, although we are informed by In re Interest of David C., we decline OJS' invitation to rely entirely on In re Interest of David C. in resolving this appeal. See River City Life Ctr. v. Douglas Cty. Bd. of Equal., 265 Neb. 723, 658 N.W.2d 717 (2003) (stating that when Legislature enacts law affecting area which is already subject of other statutes, it is presumed that it acted with full knowledge of preexisting legislation and of appellate court decisions construing and applying that legislation).
In reaching our decision, we refer to § 43-408, and we are guided by fundamental rules of statutory interpretation. We have previously stated that it is the role of the court, to the extent possible, to give effect to the entire language of a statute, and to reconcile different provisions of the statute so they are consistent, harmonious, and sensible. Gilroy v. Ryberg, 266 Neb. 617, 667 N.W.2d 544 (2003); State v. Divis, 256 Neb. 328, 589 N.W.2d 537 (1999). In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. Gilroy, supra; Newman v. Thomas, 264 Neb. 801, 652 N.W.2d 565 (2002). A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose. Galaxy Telecom v. J.P. Theisen & Sons, 265 Neb. 270, 656 N.W.2d 444 (2003). Further, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, or unambiguous out of a statute. Wilder v. Grant Cty. Sch. Dist. No. 0001, 265 Neb. 742, 658 N.W.2d 923 (2003).
In accordance with these precepts, it is clear under the language of § 43-408 that the committing court maintains jurisdiction over a juvenile committed to OJS, conducts review hearings every 6 months, and is to receive written notification of the placement and treatment status of juveniles committed to OJS at least every 6 months. See § 43-408(2) and (3). Thus, although the statute speaks of committed *28 juveniles' being "discharged from [OJS]," § 43-408(2), the statute does not explicitly say that OJS discharges the juveniles, and, on the contrary, the Legislature has explicitly mandated that the committing court "continue[s] to maintain jurisdiction" over a juvenile committed to OJS. Id. Therefore, while OJS may make an initial determination with regard to the advisability of the discharge of a juvenile committed to OJS, the committing court, as a result of its statutorily imposed continuing jurisdiction, must approve the discharge of the juvenile.
Giving effect to the language of § 43-408, we determine that there is no merit to OJS' assertion that the juvenile court erred by ordering Tamantha to remain in OJS' custody under a Conditions of Liberty contract for a prescribed period of time. The juvenile court's imposition of a 1-year time limit on the Conditions of Liberty contract was merely an exercise of the court's responsibility to review the placement and treatment of committed juveniles. Indeed, if the juvenile court were not permitted to conduct this type of periodic review, its statutorily mandated continuing jurisdiction would be rendered meaningless. See Wilder, supra. The court's order does not usurp OJS' authority to assess the advisability of the discharge of a juvenile committed to it. See § 43-408(2). The challenged order merely provides a time limit for the Conditions of Liberty contract but does not provide that Tamantha would be discharged at the end of the 1-year time period.

CONCLUSION
We conclude that the juvenile court's imposition of a 1-year time limit on the Conditions of Liberty contract was not improper. Accordingly, there is no merit to OJS' assignment of error, and we affirm the February 5, 2003, order of the juvenile court.
AFFIRMED.
McCORMACK, J., not participating.