IN RE INTEREST OF CHELSEY D., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT,
V. CHELSEY D., APPELLEE.
707 N.W.2d 798

Filed December 27, 2005.   No. A-05-334.

Jon Bruning, Attorney General, Royce N. Harper, and Bradley Gianakos, Special Assistant Attorney General, for appellant.

No appearance for appellee.

INBODY, Chief Judge, and CARLSON and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

The State of Nebraska appeals from that portion of the order of the separate juvenile court of Lancaster County which prohibited any change in the placement of Chelsey D. without prior court approval. We conclude that the juvenile court exceeded its statutory authority in imposing that restriction, and we therefore modify the order to delete that provision, but otherwise affirm.

## BACKGROUND

Following a hearing on June 6, 2002, the juvenile court adjudicated Chelsey as a child within the provisions of Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2002). On June 21, the court committed Chelsey to the custody of the Department of Health and Human Services, Office of Juvenile Services (OJS), for a residential evaluation and ordered that Chelsey be returned to the court for further hearing upon completion of the evaluation. On July 19, the court committed Chelsey to the custody of OJS for placement at the group-home level and ordered that she remain in detention at the Lancaster County juvenile detention center until the court approved a less restrictive placement. In an order filed on October 23, the court found that Chelsey's level of custody should be upgraded, and the court committed her to the custody of OJS for placement at a residential treatment center.

On February 9, 2005, the court held a hearing to review the commitment to OJS. No sworn testimony was offered during the hearing, but the court received two exhibits: a court report prepared January 27, 2005, and a letter from Chelsey dated February 7, 2005, wherein Chelsey stated that she did not feel she would be safe at home and that she would feel safer at a foster home. The court report stated that Chelsey had been in placement at "Cedars Tur[n]ing Point Treatment Group Home" since August 2004 and that the placement was meeting all of her treatment and safety needs. A case plan—labeled "Draft Only" —included within the court report showed a permanency objective of reunification with a target date of July 1, 2005, and a concurrent plan of guardianship with a target date of December 31, 2005. On the same date as the hearing, the court entered an order approving the plan of OJS but prohibiting any change in Chelsey's placement without prior court approval. The State timely appeals from that February 9 order.

### ASSIGNMENT OF ERROR

The State alleges that the juvenile court erred in prohibiting any change in Chelsey's placement without prior court approval.

### STANDARD OF REVIEW

■ Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of Tamantha S.*, 267 Neb. 78, 672 N.W.2d 24 (2003).

### ANALYSIS

Although it is clear that the juvenile court maintains jurisdiction over any juvenile committed to the custody of OJS until such time as the juvenile is discharged from OJS' custody, Neb. Rev. Stat. § 43-408(2) (Reissue 2004), this appeal raises the issue of whether Nebraska statutes grant to the juvenile court the authority to enter an order prohibiting any change without prior court approval in the placement of a juvenile committed to OJS' custody.

■ As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been

conferred on it by statute. *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005).

Section 43-408(4) addresses the transfer of juveniles committed to the custody of OJS from one place of treatment to another and states in pertinent part:

(a) Except as provided in subdivision (b) of this subsection, if [OJS] proposes to transfer the juvenile from a less restrictive to a more restrictive place of treatment, a plan outlining the proposed change and the reasons for the proposed change shall be presented to the court which committed the juvenile. Such change shall occur only after a hearing and a finding by the committing court that the change is in the best interests of the juvenile . . . . ;

(b) [OJS] may make an immediate temporary change without prior approval by the committing court only if the juvenile is in a harmful or dangerous situation, is suffering a medical emergency, is exhibiting behavior which warrants temporary removal, or has been placed in a nonstate-owned facility and such facility has requested that the juvenile be removed. Approval of the committing court shall be sought within fifteen days of making an immediate temporary change, at which time a hearing shall occur before the court. . . . ; and

(c) If the proposed change seeks to transfer the juvenile from a more restrictive to a less restrictive place of treatment or to transfer the juvenile from the juvenile's current place of treatment to another which has the same level of restriction as the current place of treatment, [OJS] shall notify the juvenile, the juvenile's parents, custodian, or legal guardian, the committing court, the county attorney, the counsel for the juvenile, and the guardian ad litem of the proposed change. The juvenile has fifteen days after the date of the notice to request an administrative hearing with [OJS], at which time [OJS] shall determine whether

it is in the best interests of the juvenile for the proposed change to occur . . . . If the juvenile is aggrieved by the administrative decision of [OJS], the juvenile may appeal that decision to the committing court within fifteen days after [OJS'] decision.

Under § 43-408(4)(a), OJS cannot transfer a juvenile to a more restrictive place of treatment without assent by the juvenile court. However, an order such as the juvenile court's in the instant case prohibiting any change in placement without prior approval clearly usurps OJS' authority to make an immediate temporary change under § 43-408(4)(b) and also infringes on OJS' ability to transfer a juvenile to a less restrictive place or to a place of the same level of restriction when the juvenile does not request a hearing on and review of the proposed transfer.

In *In re Interest of David C.*, 6 Neb. App. 198, 572 N.W.2d 392 (1997), this court concluded that although a juvenile court's jurisdiction over an adjudicated minor continued after the juvenile was committed to a treatment center under the control of OJS, the juvenile court did not have the power to require OJS to submit a treatment and placement plan prior to the juvenile's release, to notify the court before release or parole, to report any change of placement to the court, or to submit monthly progress reports. Similarly, in the instant case, it does not appear that the juvenile court has the power to enter a blanket order prohibiting OJS from making any change in placement without the court's approval.

We are mindful of the Nebraska Supreme Court's decision in *In re Interest of Tamantha S.*, 267 Neb. 78, 79, 672 N.W.2d 24, 26 (2003), where the juvenile court placed the juvenile in the custody of OJS and later ordered that the juvenile be placed under a "Conditions of Liberty contract" for 1 year unless such period was extended or revoked by the court. OJS appealed, claiming that the court did not have authority to order such a contract for a prescribed period of time and that the order improperly deprived OJS of the power to discharge the juvenile from OJS' custody. OJS relied on *In re Interest of David C., supra*, to support its argument, but the Nebraska Supreme Court recognized that the Legislature amended the juvenile code after the decision in *In re Interest of David C.*, observed that those

amendments were controlling, and therefore concluded that it would not "rely entirely" on *In re Interest of David C.* in resolving the appeal. *In re Interest of Tamantha S.*, 267 Neb. at 81, 672 N.W.2d at 27. The Supreme Court stated that although § 43-408(2) referenced juveniles' being " 'discharged from [OJS' custody],' " the statute did not state that OJS discharges the juveniles, and that "while OJS may make an initial determination with regard to the advisability of the discharge of a juvenile committed to OJS, the committing court, as a result of its statutorily imposed continuing jurisdiction, must approve the discharge of the juvenile." *In re Interest of Tamantha S.*, 267 Neb. at 82, 672 N.W.2d at 28. The Supreme Court thus concluded that the juvenile court's imposition of a 1-year time limit on the "Conditions of Liberty contract" was "merely an exercise of the court's responsibility to review the placement and treatment of committed juveniles," that the court's "statutorily mandated continuing jurisdiction would be rendered meaningless" if the court were not permitted to conduct such periodic review, that the court's order did not usurp OJS' authority to assess the advisability of a juvenile's discharge, and that the order "merely provide[d] a time limit for the Conditions of Liberty contract but d[id] not provide that [the juvenile] would be discharged at the end of the 1-year time period." *Id.* at 83, 672 N.W.2d at 28.

In the instant case, however, the juvenile court's order cannot be characterized as a mere exercise of its jurisdiction or of its responsibility to review placements of a juvenile. The language and framework of § 43-408 provide juvenile courts with the ability to review placements by OJS, but that section also provides OJS with the authority to make certain placements without prior approval by the juvenile court. We conclude that the restriction prohibiting any change in the placement of Chelsey without prior court approval is void for the reason that the provision exceeds the statutory authority of the juvenile court.

## CONCLUSION

The juvenile court exceeded its statutory authority to the extent that it attempted to prohibit any change in Chelsey's placement without court approval. We therefore modify the juvenile court's February 9, 2005, order to delete the provision which

states, "IT IS FURTHER ORDERED that the placement of Chelsey . . . shall not be changed without the prior approval of the Court."

AFFIRMED AS MODIFIED.