280 Neb. 411
IN RE INTEREST OF Jorge O., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
JORGE O., APPELLEE, AND
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, APPELLANT.
IN RE INTEREST OF DENG M., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
DENG M., APPELLEE, AND NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, APPELLANT.
Nos. S-09-966, S-09-983
Supreme Court of Nebraska.
Filed July 30, 2010.
Eric M. Stott, Special Assistant Attorney General, for appellant.
Dennis R. Keefe, Lancaster County Public Defender, for appellees Jorge O. and Deng M.
Valerie R. McHargue and Yohance L. Christie, Deputy Lancaster County Public Defenders, for appellee Jorge O. Jennifer M. Houlden, Deputy Lancaster County Public Defender, for appellee Deng M.
John C. McQuinn, Chief Assistant Lincoln City Attorney, for appellee State of Nebraska in No. S-09-983.
HeAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
In these consolidated appeals, the Nebraska Department of Health and Human Services (DHHS) appeals portions of the orders of the separate juvenile court of Lancaster County committing Jorge O. in case No. S-09-966 and Deng M. in case No. S-09-983 to the custody of DHHS' Office of Juvenile Services (OJS) for placement at the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska. In each case, the court order indicated that the juvenile court rather than OJS would determine whether to discharge the juvenile from YRTC. DHHS asserts on appeal that the orders exceeded the juvenile court's statutory authority. We affirm the commitments to YRTC but vacate the orders to the extent they placed authority to discharge the juveniles from YRTC in the juvenile court rather than in OJS.

STATEMENT OF FACTS
In case No. S-09-966, Jorge was adjudicated in October 2008 to be under the juvenile court's jurisdiction pursuant to Neb. Rev. Stat. § 43-247(1) (Reissue 2008) after he admitted leaving the scene of a motor vehicle accident in violation of Neb. Rev. Stat. § 60-696(1)(a) (Cum. Supp. 2008). At that time, he was released to the custody of his mother under certain conditions, and the violation of those conditions could result in a more restrictive placement. After an evaluation by OJS, the juvenile court committed Jorge to the custody of OJS for inhome placement. On July 24, 2009, the juvenile court approved a request for a more restrictive placement in a group home. OJS later filed a motion to transfer Jorge to a more restrictive placement at YRTC. In an order filed September 1, the juvenile court sustained the motion to transfer and ordered Jorge to be placed at YRTC. In the September 1 order, the court ordered that Jorge not be discharged without the court's approval and that subsequent to Jorge's discharge from YRTC, a review hearing be scheduled.
In case No. S-09-983, Deng was adjudicated in September 2009 to be under the juvenile court's jurisdiction pursuant to § 43-247(1) after he answered no contest to charges he had possessed stolen property and had committed an assault in violation of municipal ordinances of the city of Lincoln. In an order entered on September 14, the juvenile court ordered that Deng be committed to the custody of OJS for placement at YRTC. In the September 14 order, the court ordered that Deng not be discharged without the court's approval and that subsequent to Deng's discharge from YRTC, a review hearing be scheduled.
DHHS appeals the September 1, 2009, order regarding Jorge in case No. S-09-966 and the September 14 order regarding Deng in case No. S-09-983. We granted DHHS' motions to consolidate the two appeals.

ASSIGNMENTS OF ERROR
In each case, DHHS asserts that the juvenile court erred by entering an order that indicates that the juvenile court rather than OJS would determine whether to discharge the juvenile from YRTC and that a review hearing would be held subsequent to the juvenile's discharge from YRTC.

STANDARDS OF REVIEW
[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. In re Interest of Dakota M., 279 Neb. 802, 781 N.W.2d 612 (2010).
[2] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. Id.

ANALYSIS
In each of these appeals, DHHS claims that under the controlling statutes and rules, the juvenile court was without statutory authority to make the decision whether to discharge the juvenile from YRTC. The language in the court's orders in cases Nos. S-09-966 and S-09-893, to which objection is made, reads as follows: "IT IS FURTHER ORDERED that the minor child shall not be discharged from [OJS] without the approval of this Court." DHHS also objects to the additional language in each order to the effect that upon the juvenile's discharge, a review hearing purportedly pursuant to Neb. Rev. Stat. § 43-408 (Reissue 2008) should be scheduled.
In case No. S-09-966, counsel for all parties join in DHHS' argument seeking reversal for the reason that under the Health and Human Services, Office of Juvenile Services Act (OJS Act), Neb. Rev. Stat. §§ 43-401 through 43-423 (Reissue 2008), OJS rather than the juvenile court is empowered to decide without juvenile court approval when the juvenile should be discharged from YRTC. In case No. S-09-983, counsel for the juvenile, the Lancaster County public defender, agrees with DHHS; however, the Lincoln City Attorney, on behalf of the State, argues that the juvenile court's order in that case should be affirmed, because the order was within the juvenile court's general authority under the Nebraska Juvenile Code to exercise continuing jurisdiction.
We have considered the relevant statutes and conclude that to the extent there is a conflict between the OJS Act and the Nebraska Juvenile Code on the subject matter at issue, the OJS Act, which is the specific statute, controls over the general statute, the juvenile code. See R & D Properties v. Altech Constr. Co., 279 Neb. 74, 776 N.W.2d 493 (2009). We therefore agree with the arguments tendered by DHHS, and in particular hold that under the statutory scheme established by the Legislature in the OJS Act, it is the responsibility of OJS to determine the discharge of juveniles committed to YRTC, and the juvenile court erred when it ruled to the contrary.
[3] We have observed that as a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred on it by statute. In re Interest of Dakota M., supra; In re Interest of Dustin S., 276 Neb. 635, 756 N.W.2d 277 (2008). The statutes and rules and regulations quoted below are relevant to our resolution of the breadth of the juvenile court's statutory authority in these cases. In considering these statutes, we note that the general statutes pertaining to juveniles are found in the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Reissue 2008), whereas the particular statutes pertaining to OJS which control our disposition of these cases are found in the OJS Act at §§ 43-401 to 43-423.
OJS is a division within DHHS that is charged with the oversight, administration, and control of state juvenile correctional facilities and programs for juveniles who have violated the law. See § 43-404. Section 43-405(4) of the OJS Act provides that included in "[t]he administrative duties of [OJS]" is the duty to "[a]dopt and promulgate rules and regulations for the levels of treatment and for management, control, screening, evaluation, treatment, rehabilitation, parole, transfer, and discharge of juveniles placed with or committed to [OJS]." (Emphasis supplied.)
The administrative code pertaining to juveniles committed to YRTC, 401 Neb. Admin. Code, ch. 8, § 003 (1998), and entitled "Parole or Institutional Discharge of Committed Youth," provides:
A team comprised of institutional treatment staff, the assigned Juvenile and Family Services Worker, and other designated persons involved with the case shall periodically review the youths' progress and submit recommendations for release to parole or institutional discharge to the Chief Executive Officer. The Chief Executive Officer shall review the team's recommendation and, if he or she concurs, authorize the release of the youth to parole supervision or effect an institutional discharge of a youth from the state's custody. If there is disagreement between the Chief Executive Officer and the team concerning a release recommendation, the Chief Executive Officer and team will discuss concerns and attempt to reach agreement. If the two parties cannot reach consensus, the matter shall be referred to the Protection and Safety Administration for resolution.
(Emphasis supplied.)
Section 43-412(2) of the OJS Act provides that "[t]he discharge of any juvenile pursuant to the rules and regulations or upon his or her attainment of the age of nineteen shall be a complete release from all penalties incurred by conviction or adjudication of the offense for which he or she was committed."
Section 43-408(2) of the OJS Act provides:
The committing court shall order the initial level of treatment for a juvenile committed to [OJS]. Prior to determining the initial level of treatment for a juvenile, the court may solicit a recommendation regarding the initial level of treatment from [OJS]. Under this section, the committing court shall not order a specific placement for a juvenile. The court shall continue to maintain jurisdiction over any juvenile committed to [OJS] until such time that the juvenile is discharged from [OJS]. The court shall conduct review hearings every six months, or at the request of the juvenile, for any juvenile committed to [OJS] who is placed outside his or her home, except for a juvenile residing at a [YRTC]. The court shall determine whether an out-of-home placement made by [OJS] is in the best interests of the juvenile, with due consideration being given by the court to public safety. If the court determines that the out-of-home placement is not in the best interests of the juvenile, the court may order other treatment services for the juvenile.
Section 43-247 of the Nebraska Juvenile Code pertains to the juvenile courts and their jurisdiction. The city attorney directs our attention to the following language of § 43-247:
Notwithstanding any disposition entered by the juvenile court under the Nebraska Juvenile Code, the juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction.
In its appellate briefs, DHHS summarizes its argument as follows:
If the Legislature intended for the juvenile court to have the authority to require its approval for discharge of juveniles committed to a YRTC, the OJS Act would have been written to include such authority. As the [OJS] Act is currently written, OJS has the authority to provide treatment to the juveniles in accordance with the court's orders and to discharge the juveniles in accordance with OJS' rules and regulations.
Briefs for appellant at 13.
In its briefs filed on behalf of the juveniles, the public defender agrees with DHHS and states that there are only two possible statuses the juvenile may have following release from YRTC, parole or discharge, both of which preclude the subsequent involvement of the juvenile court in an OJS case. The public defender observes that the instant cases involve discharge. In its briefs, the public defender states that "if [the juvenile] were to be institutionally discharged, he would have a `complete release' from all penalties incurred from the Juvenile Court adjudication and OJS commitment, including a complete release from the continuing jurisdiction of the Juvenile Court. Neb. Rev. Stat. § 43-412." Briefs for appellees Jorge and Deng at 3. Consistent with the foregoing, the public defender correctly notes that the appellate courts have recently concluded that only OJS has the authority to revoke a juvenile's parole. In re Interest of Sylvester L., 17 Neb. App. 791, 770 N.W.2d 669 (2009). See § 43-416.
In response, and contrary to the position of DHHS and the public defender, the city attorney relies on certain cases and further argues that the juvenile court continues to maintain jurisdiction over the juvenile while at YRTC under the Nebraska Juvenile Code's general continuing jurisdiction provision in § 43-247 and also under § 43-408(2). The city attorney argues that the continuing jurisdiction language implies that the juvenile court possesses the authority to determine the juvenile's discharge from YRTC, notwithstanding the court's having committed the juvenile to OJS. We disagree with the city attorney's reading of the statutes.
[4] Included in the administrative duties of OJS under § 43-405(4) of the OJS Act is the duty of OJS to "[a]dopt and promulgate rules and regulations for the . . . discharge of juveniles placed with or committed to [OJS]." Such rules and regulations governing "Parole or Institutional Discharge of Committed Youth" are found at 401 Neb. Admin. Code, ch. 8, § 003. Under these rules dealing with juveniles committed to YRTC, an assigned team reviews the committed juvenile's "progress and submit[s] recommendations for . . . institutional discharge to the Chief Executive Officer [to] effect an institutional discharge of a youth from the state's custody." Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law. Swift & Co. v. Nebraska Dept. of Rev., 278 Neb. 763, 773 N.W.2d 381 (2009). Finally, § 43-412(2) of the OJS Act provides that "[t]he discharge of any juvenile pursuant to the rules and regulations. . . shall be a complete release from all penalties incurred by conviction or adjudication of the offense for which he or she was committed."
Taking these provisions together, it is clear that although the juvenile court initially commits the juvenile to YRTC, once the juvenile is under OJS authority at YRTC, the decision to discharge is placed with OJS pursuant to the OJS Act and rules promulgated thereunder, and the OJS decision to discharge is a complete release from the juvenile court system with respect to the offense which occasioned the adjudication. The challenged juvenile court orders impede the institutional discharge power specifically placed in OJS by the OJS Act, and such orders attempting to place the decision to discharge in the juvenile court exceeded the juvenile court's statutory authority. As we have observed, the power of the juvenile court must be strictly construed from the applicable statutes and the court must therefore defer to the Legislature. In re Interest of Dustin S., 276 Neb. 635, 756 N.W.2d 277 (2008). Thus, the specific OJS statutory scheme outlined above, rather than the statutory general continuing jurisdiction language, controls the outcome of these cases.
For completeness, we note that in In re Interest of Tamantha S., 267 Neb. 78, 672 N.W.2d 24 (2003), we endorsed the application of the continuing jurisdiction language where the juvenile was in inhome placement. To the extent In re Interest of Tamantha S. is inconsistent with our disposition of the present cases, it is disapproved. However, consistent with our resolution of the discharge issue in these cases, we note that the appellate courts have held, as in In re Interest of Sylvester L., supra, that the decision to parole a juvenile from YRTC belongs to OJS. Under similar reasoning, as we now hold, the decision to discharge the juvenile from YRTC under the controlling statutes and rules and regulations belongs to OJS.
DHHS also takes issue with the portions of the challenged orders in which the juvenile court set review hearings subsequent to the juveniles' discharge from YRTC. We agree with DHHS that these orders were improper.
In ordering the review hearings, the juvenile court referred to § 43-408. A reading of § 43-408(2), however, shows there is no support for the juvenile court's orders setting review hearings under that provision. To the contrary, although § 43-408(2) provides for "review hearings every six months" for juveniles committed to OJS, the statute specifically exempts "a juvenile residing at a [YRTC]" from these periodic hearings. Further, under § 43-412(2), we conclude that the discharge from YRTC is a "complete release" precluding the exercise of juvenile court authority with respect to the case giving rise to the placement at YRTC. The juvenile court exceeded its statutory authority when it ordered the review hearings after discharge from YRTC.

CONCLUSION
The juvenile court did not err when it ordered Jorge and Deng committed to OJS for placement at YRTC, and we affirm this aspect of the orders. However, the juvenile court exceeded its statutory authority to the extent that it ordered that the juvenile court rather than OJS had the authority to determine the discharge of the juveniles from YRTC and further erred when it ordered review hearings subsequent to discharge. We therefore vacate these portions of the orders.
AFFIRMED IN PART, AND IN PART VACATED.