IN RE INTEREST OF JUAN L., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. JUAN L., APPELLEE, AND
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES,
INTERESTED PARTY, APPELLANT.
577 N.W. 2d 319

Filed March 17, 1998.    No. A-97-697.

Don Stenberg, Attorney General, Royce N. Harper, and Beth Tallon, Special Assistant Attorney General, for appellant.

Richard T. Seckman, Colfax County Attorney, for appellee State.

HANNON, IRWIN, and MUES, Judges.

HANNON, Judge.

On the basis of four separate petitions, Juan L. was adjudicated as a juvenile under Neb. Rev. Stat. § 43-247(1) and (2) (Reissue 1993 & Cum. Supp. 1996) by the Colfax County Court, sitting as a juvenile court. In a dispositional order, which was common to all four adjudications and dated April 17, 1997, the juvenile court committed Juan to the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska, a facility now operated by the Office of Juvenile Services (OJS), which has recently been made a part of the newly created Nebraska Department of Health and Human Services (Department). See, Neb. Rev. Stat. § 43-286(2) (Cum. Supp. 1996); Neb. Rev. Stat. § 83-465 (Reissue 1994); Neb. Rev. Stat. § 83-472 (Cum. Supp. 1996); 1996 Neb. Laws, L.B. 1044. See, also, *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997).

On May 29, 1997, probably upon notification of Juan's expected release from the YRTC, the juvenile court ordered the county sheriff to transport Juan, on his release date, from the YRTC to a detention facility and then to the juvenile court for further hearing. In an order filed June 13, the juvenile court stated that it would continue to exercise jurisdiction over Juan and ordered that Juan's placement would continue with OJS, which would provide parole services, oversee Juan's restitution payments, provide monitoring for house arrest when Juan was not working, and otherwise monitor Juan's compliance with the conditions of his parole order. The order also provided that OJS would have 5 days to place Juan on electric monitoring. The Department now appeals from the May 29 and June 13 orders.

On the basis of *In re Interest of David C., supra,* we conclude that the orders are void insofar as they attempt to order OJS in its management of Juan while he was committed to the YRTC or to order OJS to continue to supervise Juan in any capacity

after OJS discharged him from the YRTC. In addition, on the basis of plain error, we set aside both orders because they were issued without adequate notice or hearing.

## BACKGROUND

The record reveals that Juan was adjudicated a juvenile, as defined in § 43-247, at various times. In case No. JV96-102, the petition alleged that on October 5, 1996, Juan was found in possession or physical control of alcoholic liquor and in violation of curfew. Pursuant to his in-court admissions, Juan was found to be a juvenile as defined in § 43-247(1).

In case No. JV96-117, Juan was charged with violating curfew on November 1, 1996. The transcript does not contain a petition, but, rather, a "State of Nebraska Uniform Citation and Complaint," charging Juan with violation of a municipal ordinance. On November 21, pursuant to Juan's in-court admissions, he was found to be "a child as described in 43-247."

In case No. JV96-119, the petition alleged that on October 20, 1996, Juan had assaulted another and was therefore a minor as defined in § 43-247(1). On November 21, Juan admitted all of the allegations contained in the petition, and the court found him to be a juvenile as described in § 43-247 and ordered the probation officer to prepare a predisposition report.

The journal entries of the above-described adjudication proceedings show that regular procedure was followed in all three cases, with the exception of case No. JV96-117. In that case, no petition was filed, and the citation did not contain the allegations which are necessary to invoke the jurisdiction of the juvenile court. See Neb. Rev. Stat. § 43-274 (Reissue 1993). The adjudication would obviously be void unless the praecipe for transcript was not followed and the petition was not included in the transcript by mistake. However, because the original order of commitment and the subsequent orders appealed from also relate to three other properly adjudicated cases, the invalidity of the adjudication of case No. JV96-117 does not appear to have prejudiced anyone.

In case No. JV97-9, a petition filed on January 22, 1997, alleged that Juan was a child as described in § 43-247(1) and (2). This petition alleged in detail that between October 18 and

November 29, 1996, Juan had committed 12 different offenses, including theft, burglary, and damage to property. In summary, the petition alleged that on several occasions, Juan had broken into vehicles or business buildings and taken property from them.

The record contains a journal entry, dated February 6, 1997, in all four cases. The journal entry reflects that after Juan was advised of his rights, he requested counsel. The court granted his request and suspended the adjudication hearing in case No. JV97-9 and the temporary disposition in the other three cases until March 6. This journal entry was filed on March 24 and has not been appealed.

At a hearing on March 13, 1997, in which Juan was represented by counsel, Juan admitted all the allegations of the petition in case No. JV97-9. The court found that Juan was a juvenile as alleged in the petition and ordered Juan to be placed under house arrest with a monitor, with the condition that if he violated the house arrest, he would be delivered to the Wayne Detention Center by the Colfax County Sheriff. The court scheduled disposition in all four cases for April 17.

On April 17, 1997, a dispositional hearing was held in all four cases. Counsel for Juan was present. As reflected in a journal entry filed April 22, the court committed Juan to the YRTC-Kearney, with the recommendation that the YRTC keep Juan in its custody for at least 6 months. The court also ordered Juan and his parents to pay restitution in the amount of $3,389.07 and to pay court costs. Lastly, the court ordered the YRTC to give the court 20 days' notice prior to releasing Juan from its facility. The Department did not appeal from this order.

A journal entry filed and dated May 29, 1997, reflects the following:

> [T]his matter comes before the County Court of Colfax County, Nebraska upon its own Motion after receiving notice from the Youth Rehabilitation and Treatment Center in Kearney, Nebraska, that [Juan] is to be released from their facility on June 2nd, 1997.
>
> The Court hereby finds that it is in the best interest of [Juan] to appear before this Court for further hearing and hereby orders the Sheriff of Colfax County, or any duly

authorized agent to transport . . . Juan . . . from the Youth Rehabilitation and Treatment Center to the Wayne Detention Facility in Wayne, Nebraska, on June 2nd, 1997. The Sheriff of Colfax County shall then transport the juvenile to the Colfax County Court on June 5th, 1997, for further hearing before this Court at 10:00 a.m.

A journal entry filed June 13, 1997, reflects that on June 5 a hearing was held on the four cases for purposes of further disposition. The relevant portion of that order is as follows:

The Court does state that it will continue its jurisdiction over this juvenile until the juvenile reaches the age of majority, or until further order of this Court terminating jurisdiction. The Court DOES ORDER AND ADJUDGE that placement shall be continuing with the Office of Juvenile Services, who shall provide parole services to the juvenile and oversee his restitution payments previously ordered in this case. Said Office of Juvenile Services shall also provide a monitor for the house arrest when the juvenile is not working or otherwise complying with his conditions of his parole order. The Office of Juvenile Services shall have five days from this date to place the juvenile on electric monitoring and shall so notify the court.

The Department timely appeals from the latter two orders for all four cases.

## ASSIGNMENTS OF ERROR

The Department contends that the court erred in (1) concluding, contrary to the provisions of § 83-472, that it had continuing jurisdiction over Juan after it had committed him to the YRTC; (2) professing to retain jurisdiction of the matter subject to Juan's release from the YRTC; (3) ordering the sheriff to transport Juan, upon his release from the YRTC, to the Wayne Detention Center and then to the court for further disposition; and (4) stating that it would continue jurisdiction over Juan until he reached the age of majority or until the court terminated jurisdiction. The Department also contends that the court's actions violated Nebraska's separation of powers clause, Neb. Const. art. II, § 1, and the Double Jeopardy Clause, U.S. Const. amend. V and Neb. Const. art. I, § 12.

## STANDARD OF REVIEW

■ In reviewing questions of law arising in proceedings under the Nebraska Juvenile Code, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997); *In re Interest of Jeffrey R.*, 251 Neb. 250, 557 N.W.2d 220 (1996). In addition, statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of Jeffrey R., supra.*

■ Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of D.W., supra.*

## ANALYSIS

*Continuing Jurisdiction of Juvenile Court.*

Section 43-247 provides, in relevant part, that "the juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction."

■ The Department makes the same argument that it did in *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997), that a juvenile's commitment to OJS, pursuant to § 83-472, amounts to a discharge under § 43-247 and therefore divests the court of jurisdiction over the juvenile. We rejected that argument, holding that a juvenile court retains jurisdiction of a juvenile after he or she is committed to a YRTC. *In re Interest of David C., supra.* As a result, the court in this case was correct in concluding that its jurisdiction shall continue until Juan

reaches the age of majority or until it otherwise discharges Juan from its custody. The Department's first, second, and fourth assignments of error are therefore without merit.

*Juvenile Court's Jurisdiction Over OJS.*

It is clear that the juvenile court was of the opinion that it had continuing jurisdiction over Juan until either he reached the age of majority or the court otherwise discharged Juan from the court's jurisdiction. In its June 13, 1997, journal entry, the juvenile court ordered that placement of Juan should continue with OJS. The court then proceeded to dictate requirements to OJS, namely that it provide parole services to Juan; oversee the payment of restitution; provide a monitor for Juan's house arrest; and within 5 days, place Juan on electric monitoring and notify the court. It would seem profitable to examine the nature of the court's jurisdiction and whether or not it can be exercised in the manner the juvenile court sought to do so in this case.

Neb. Rev. Stat. § 43-295 (Reissue 1993) provides, except in the case of adoption:

> [T]he jurisdiction of the court shall continue over any juvenile brought before the court or committed under the Nebraska Juvenile Code and the court shall have power to order a change in the custody or care of any such juvenile if at any time it is made to appear to the court that it would be for the best interests of the juvenile to make such change.

In *In re Interest of David C., supra,* we held that a juvenile court does not have the authority to order OJS in its supervision of a juvenile. We stated that there is an "important distinction between a juvenile court's continuing to exercise jurisdiction over a juvenile and a juvenile court's directing OJS in its management of a juvenile that has been committed to OJS." *Id.* at 211, 572 N.W.2d at 400. The first is permissible under the statutes, specifically §§ 43-247 and 43-295; the second is not. "This is not to say that a juvenile court may exercise such jurisdiction at the whim of the judge, but only after a proposed change is brought before the court with appropriate pleadings, notice, and a hearing with evidence which justifies a change in placement." *In re Interest of David C., ante* at 210, 572 N.W.2d at 400.

Moreover, in *In re Interest of L.D. et al.*, 224 Neb. 249, 262, 398 N.W.2d 91, 100 (1986) (juvenile court had no power under § 43-295 to review evidentiary basis of its order which became final as adjudication of subject matter jurisdiction under § 43-247), the Nebraska Supreme Court stated:

It is true that § 43-295 does allow a juvenile court to alter its previous order concerning "custody or care" of a juvenile. Section 43-295 is a statutory analog to Neb. Rev. Stat. § 42-351(1) (Reissue 1984) authorizing a district court's continuing jurisdiction involving "the custody and support of minor children" affected by proceedings for dissolution of a marriage. Cf. *Nimmer v. Nimmer*, 203 Neb. 503, 505, 279 N.W.2d 156, 158 (1979): "The decree of a District Court in an action for the dissolution of a marriage, insofar as minor children are concerned, is never final in the sense it cannot be changed. . . ."

The present basis for the district court's jurisdiction is in line with Neb. Rev. Stat. § 42-364(1) (Cum. Supp. 1996), which, concerning custody and visitation, provides in part: "Subsequent changes may be made by the court after hearing on such notice as prescribed by the court." This sentence has been interpreted by the Nebraska Supreme Court and this court to mean that the trial court has no authority to act without providing the parties with notice and an opportunity to be heard. *Francis v. Francis*, 195 Neb. 417, 238 N.W.2d 468 (1976); *Miller v. Miller*, 153 Neb. 890, 46 N.W.2d 618 (1951); *Eisenmann v. Eisenmann*, 1 Neb. App. 138, 488 N.W.2d 587 (1992). A judgment is void if a party is denied an opportunity to be heard. *Id.*

In a very old case, *Laurie v. State*, 108 Neb. 239, 246, 188 N.W. 110, 113 (1922), the Nebraska Supreme Court recognized that after a commitment order, if the juvenile changed so that in the opinion of the judge the commitment order should be changed or modified, the court could do so "to the end that the object and purpose of the act be carried out and [the juvenile's] reformation brought about in some other way and place."

The present statutory procedure for modification of disposition orders is found in § 43-286(4) and generally provides as follows:

When a juvenile is placed on probation or under the supervision of the court for conduct under subdivision (1), (2), (3)(b), or (4) of section 43-247 and it is alleged that the juvenile has violated a term of probation or supervision or that the juvenile has violated an order of the court, a motion to revoke probation or supervision or to change the disposition may be filed and proceeding held . . . .

That statute then goes on to provide a procedure for an informal evidentiary hearing. See, generally, *In re Interest of Torrey B., ante* p. 658, 577 N.W.2d 310 (1998). We notice that this statute does not provide for a further disposition when the juvenile has been committed to OJS, but only when the juvenile has been placed on probation or under supervision of the court.

On the basis of double jeopardy, the Department argues that the court cannot further dispose of a juvenile after the juvenile has been committed to OJS. As discussed below, because the Department, and not Juan, appealed, we need not consider that question. In other words, we are not considering specifically how the juvenile court can exercise its continuing jurisdiction.

As in *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997), the case of *Brown v. Doeschot*, 185 Neb. 293, 175 N.W.2d 280 (1970), provides guidance. In *Brown v. Doeschot*, a juvenile was committed to the Boys' Training School at Kearney (now YRTC-Kearney). After being advised that the Omaha Home for Boys would accept the juvenile, the court suspended the prior commitment. Later, the probation officer, on behalf of the State, filed a motion to review placement; alleging that the juvenile had absented himself from the home on three occasions. After notice and a hearing, the court ordered that the juvenile remain in the Omaha Home for Boys. After approximately 1½ months, the State filed another motion to review placement based on similar allegations, and after a hearing, the court terminated the responsibility of the Omaha Home for Boys and recommitted the juvenile to the Boys' Training School. The juvenile appealed from the latter order.

The juvenile court's action was upheld on appeal. The *Brown v. Doeschot* court recognized that the juvenile court had continuing jurisdiction, pursuant to the language now found in § 43-295, and broad discretion as to the disposition of a juve-

nile found to be delinquent. The court further recognized that the interests of both the juvenile and society should be considered in making such a decision. The court also noted the initial commitment to the Boys' Training School but did not discuss whether that order might prevent a second commitment.

We think that the procedure followed in *Brown v. Doeschot* is an example of the correct procedure to modify a disposition order; one which was sorely lacking in the instant case. The record reveals that on May 29, 1997, the court, after being notified of Juan's impending release from the YRTC on June 2, entered an order, on its own motion, directing the sheriff to pick up Juan from the YRTC on June 2 and transport him to the Wayne Detention Center and then on June 5 to transport him to court for further hearing. The effect of the court's order was that it committed a juvenile to a detention center for the sole reason that he was to be released from the YRTC. We point out that at least theoretically, it is possible that Juan has reformed enough to no longer require further detention in an institution far from his home. Because he was being released from the YRTC, he should, at least, be entitled to that presumption. We would be naive in the extreme if we did not deduct from this and other cases that the real basis of this litigation is a difference in opinion between the juvenile court judges involved and the management of the YRTC.

From a due process standpoint, the order of June 13, 1997, is more disturbing. The effect of the order was to subject a juvenile to electronic monitoring for an unspecified time under unspecified "parole." Yet, there is no petition containing any allegations, and the order of May 29, 1997, merely set the time for the hearing. What is even more worrisome, however, is that the bill of exceptions does not contain any evidence, stipulations, or documents. At the hearing, the judge stated that Juan was being paroled. After statements by counsel, the judge asked Juan what kind of plan he had for restitution, and Juan essentially replied that he wanted to find a job. The judge then proceeded to state the terms of the order the county attorney was to draw. The judge announced his opinion of OJS' power to discharge Juan and of his power to continue to exercise jurisdiction over Juan. The judge ended the hearing with warning Juan as to

the consequences if any more graffiti was found in town. The judge also told Juan that the county attorney had told him that if Juan committed another felony, he would be prosecuted in adult court. In short, we think anyone reading the record would realize the judge was also acting as an investigator, a prosecutor, a social worker, and an administrator. In doing so, the judge abandoned his primary responsibility. No one could read the record in this case and have any hope that Juan's fate was determined upon known evidence which Juan or his attorney had a reasonable chance to dispute.

We have been presented with two nearly identical presentence investigation reports that are approximately 200 pages in length. They are shown to have been filed on April 15, 1997, but we have no indication of any on-the-record proceeding in connection with the matter. Of course, the presentence investigation reports would relate to the disposition which resulted in Juan's commitment to the YRTC, but they contain no information about Juan's conduct after the commitment.

■ Procedural due process includes notice to the person whose right is affected by the proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and hearing before an impartial decisionmaker. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). We conclude that it was plain error for the juvenile court to enter the May 29 and June 13, 1997, orders because such due process was not followed.

These proceedings seriously concern us. It appears as though Juan is in need of serious management. We understand how a juvenile court judge might be concerned that a juvenile with Juan's history could be restored to his home after only approximately 6 weeks in a YRTC. We further understand the juvenile court's frustration. However, neither we nor the juvenile court have the knowledge or power to manage OJS. Our concern is

with the fact that in its zeal to impose its own notions of the proper management of Juan over those selected by OJS, the juvenile court overlooked several critical procedures mandated by statute and fundamental principles of due process.

■ We hold that in exercising its jurisdiction, a juvenile court cannot modify a disposition order without, at least, a motion, appropriate notice, and a hearing satisfying the requirements of due process. See, generally, *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997). As a result, the orders are void and must be vacated.

In the instant case, even if procedural due process requirements had been satisfied, the order of June 13, 1997, would still have to be reversed. Section 43-286 provides in part as follows:

When any juvenile is adjudicated to be a juvenile described in subdivision (1), (2), (3)(b), or (4) of section 43-247:

(1) The court may continue the dispositional portion of the hearing, from time to time upon such terms and conditions as the court may prescribe, including an order of restitution of any property stolen or damaged when the same is in the interest of the juvenile's reformation or rehabilitation, and, subject to the further order of the court, may:

(a) Place the juvenile on probation subject to the supervision of a probation officer;

(b) Permit the juvenile to remain in his or her own home, subject to the supervision of the probation officer; or

(c) Cause the juvenile to be placed in a suitable family home or institution, subject to the supervision of the probation officer. If the court has committed the juvenile to the care and custody of the Department of Health and Human Services, the department shall pay the costs of the suitable family home or institution which are not otherwise paid by the juvenile's parents.

■ This court has held that a juvenile court does not have the statutory authority under this section to order the Department of Social Services to supervise a juvenile's probation. *In re Interest of Robin C.,* 3 Neb. App. 936, 535 N.W.2d

831 (1995). However, 1996 Neb. Laws, L.B. 1044, transferred the Department of Social Services to the Department. See, Neb. Rev. Stat. § 81-3006 (Cum. Supp. 1996); *In re Interest of David C., supra.* It naturally follows under § 43-247 that the juvenile court, in addition to lacking the authority to order the Department to supervise a juvenile's probation, also lacks the authority to order the Department to supervise a juvenile's house arrest or to oversee a juvenile's payment of restitution.

*Separation of Powers and Double Jeopardy.*

As in *In re Interest of David C., supra,* the Department contends that the juvenile court's actions violated both the Double Jeopardy Clause and the separation of powers clause. However, neither constitutional argument was presented to, considered by, or ruled upon by the juvenile court, and moreover, the double jeopardy claim would be Juan's, not the Department's. See, *State v. Criffield,* 241 Neb. 738, 490 N.W.2d 226 (1992); *State v. Hoffman,* 227 Neb. 131, 416 N.W.2d 231 (1987); *State v. Carter,* 205 Neb. 407, 288 N.W.2d 35 (1980); *In re Interest of David C., supra.* And to the extent the Department's arguments concern the constitutionality of statutes, this court has no jurisdiction to make such determinations. See Neb. Rev. Stat. § 24-1106 (Reissue 1995). Thus, these issues are not properly before us. See *In re Interest of David C., supra.*

## CONCLUSION

We declare that the orders are void insofar as they purport to direct OJS in its management of juveniles committed to a YRTC or require OJS to supervise probation, house arrest, or the payment of restitution. In addition, on the basis of plain error, we set aside the orders of May 29 and June 13, 1997, without prejudice to the juvenile court's entertaining further proceedings concerning Juan in the exercise of its jurisdiction.

REVERSED AND VACATED.