IN RE INTEREST OF SEAN H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT, V. SEAN H., APPELLEE.
711 N.W.2d 879

Filed April 7, 2006. No. S-05-894.

L. Kenneth Polikov, Sarpy County Attorney, and Carolyn A. Rothery, and Michael E. Brzica and Adam Kent, Senior Certified Law Students.

Thomas P. Strigenz, Sarpy County Public Defender, Dennis Marks, and Patrick J. Boylan, and Tina Kula, Senior Certified Law Student.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

CONNOLLY, J.

While handling a revolver, 15-year-old Sean H. shot his 22-year-old friend, Jared Naughton. The State charged Sean with unlawful act manslaughter and deporting himself so as to injure another by being a minor in possession of a revolver. The juvenile court dismissed the manslaughter charge, finding that the State had failed to meet its burden of proof, but found that Sean did commit the predicate offense of unlawfully possessing a revolver. The State appeals the dismissal of the manslaughter charge under Neb. Rev. Stat. §§ 43-2,106.01 (Reissue 2004) and 29-2317 to 29-2319 (Reissue 1995 & Cum. Supp. 2004), which

allow the State to take exception to trial court decisions. Because the State did not strictly adhere to the statutory procedure for appeals, we dismiss the State's exception for lack of jurisdiction.

## BACKGROUND

On November 14, 2004, Sean and his 18-year-old friend, Joshua B., were watching a movie at Sean's home when Naughton invited them to "hang out" at his home. When Joshua and Sean arrived, they found Naughton upstairs in his bedroom. The three talked while Naughton smoked marijuana. The conversation turned to guns, and Naughton showed them his handgun, pointing out the new grips. Naughton then handed the gun to Sean for inspection. When Sean asked if it was loaded, Naughton said, "[N]o, it's not loaded, you can point it at me and shoot it and it won't go off."

Joshua said he warned Sean not to "trust it," but Sean said later that he did not hear Joshua's warning. According to Sean, Naughton then told him to go ahead and "do it." Joshua recalled Sean pausing to think before pulling the trigger. After Sean squeezed the trigger, Naughton grabbed his chest and said, "Oh my God, you shot me." Thinking that Naughton was playing a trick on him, Sean fired the gun into the floor. As he did so, Sean felt air rush past his leg, saw Naughton fall to the floor with blood on him, and realized the gun was loaded. Sean began to panic and called the 911 emergency dispatch service.

The court made the following factual findings: that Sean persistently asked Naughton if the gun was loaded, that Naughton reassured Sean it was not, that Naughton told Sean to aim the gun at him and shoot, and that Sean paused to think before pulling the trigger, but acted unintentionally.

From this evidence, the court found that no assault occurred because Naughton was not in fear for his safety. The court opined that the salient issue was whether the State proved beyond a reasonable doubt that Sean intended to possess the revolver. The court concluded that Naughton remained in constructive possession of the revolver and in control of his surroundings. The court said that Sean's momentary thought before pulling the trigger could raise an issue whether Sean "thought independently of the victim's directive," but that the State did not meet its burden

of proving that he did. The court dismissed the manslaughter charge, but found that the State had met its burden on the allegation that he possessed a revolver.

## ASSIGNMENTS OF ERROR

The State assigns that (1) the court erred in ruling that the crime of unlawful possession of a revolver is not sufficient to support the crime of unlawful act manslaughter and (2) the court erred in ruling that the State did not prove beyond a reasonable doubt that Sean had committed the crime of manslaughter.

## STANDARD OF REVIEW

■ An appellate court determines jurisdictional issues not involving factual disputes as a matter of law, which requires the appellate court to reach independent conclusions. See *In re Interest of William G.*, 256 Neb. 788, 592 N.W.2d 499 (1999).

## ANALYSIS

■ Under Neb. Rev. Stat. § 28-305 (Reissue 1995), "[a] person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act." Here, the State charged Sean with unlawful act manslaughter; to supply the requisite unlawful act, the State cited unlawful possession of a revolver. The State argues that any unlawful act can serve as the underlying offense in unlawful act manslaughter and asks us to apply this rule to future cases. In response, the defense points out that unlawful possession of a revolver is a status offense and argues that status offenses should not support manslaughter convictions. We do not address these issues, however, because we lack jurisdiction.

■ Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Malolepszy v. State*, 270 Neb. 100, 699 N.W.2d 387 (2005). Absent specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case. See, *State v. Johnson*, 259 Neb. 942, 613 N.W.2d 459 (2000); *State v. Baird*, 238 Neb. 724, 472 N.W.2d 203 (1991).

Nonetheless, Nebraska statutes authorize the State to appeal criminal decisions in a few specific instances. Neb. Rev. Stat. §§ 29-2315.01 to 29-2316 (Reissue 1995 & Cum. Supp. 2004) allow the State to take exception to district court decisions. See *State v. Schall*, 234 Neb. 101, 449 N.W.2d 225 (1989) (finding "trial court" synonymous with "district court" under § 29-2315.01). Similarly, §§ 29-2317 to 29-2319 allow the same with county court decisions. Under § 43-2,106.01(2)(d), the Legislature similarly limited the State's right to appeal delinquency issues in juvenile court when jeopardy has attached. These statutory provisions allow the State to seek limited review of adverse rulings and outline the procedure to obtain such review. See *State v. Johnson, supra.*

However, appeals under specific statutory provisions require strict adherence to the statute's procedures. See, e.g., *State v. Johnson, supra* (dismissing State's exception for failure to comply with § 29-2315.01); *In re Interest of T.W. et al.*, 234 Neb. 966, 453 N.W.2d 436 (1990) (dismissing parents' appeals for failure to comply with the predecessor to § 43-2,106.01); *State v. Steinbach*, 11 Neb. App. 468, 652 N.W.2d 632 (2002) (directing lower court to dismiss appeal for State's failure to comply with § 29-2317).

The State appeals the juvenile court's order, claiming jurisdiction under § 43-2,106.01, which governs appellate jurisdiction for separate juvenile courts. See *In re Interest of Jedidiah P.*, 267 Neb. 258, 673 N.W.2d 553 (2004). Section 43-2,106.01 provides:

> (1) Any final order or judgment entered by a juvenile court may be appealed to the Court of Appeals in the same manner as an appeal from district court to the Court of Appeals. The appellate court shall conduct its review within the same time and in the same manner prescribed by law for review of an order or judgment of the district court . . . .
>
> (2) An appeal may be taken by:
>
> . . . .
>
> (d) The county attorney or petitioner, *except that* in *any case* determining delinquency issues in which the juvenile has been placed legally in jeopardy, an appeal of such

issues *may only be taken by exception proceedings pursuant to sections 29-2317 to 29-2319.*

(Emphasis supplied.)

As is clear from § 43-2,106.01(1), most cases arising under that statute are governed by Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2004), which sets forth the requirements for appealing district court decisions. See *In re Interest of Noelle F. & Sarah F.*, 249 Neb. 628, 544 N.W.2d 509 (1996). But the plain language of § 43-2,106.01(2)(d) carves out an exception for delinquency cases in which jeopardy has attached. In such cases, appeal may be taken only under the procedures of §§ 29-2317 to 29-2319.

■ Sections 29-2317 to 29-2319 outline exception proceedings, which allow prosecuting attorneys to "take exception to any ruling or *decision of the county court . . .* by presenting to the court a notice of intent to take an *appeal to the district court.*" § 29-2317(1). The language of § 29-2317 requires the appeal of a county court judgment to the district court sitting as an appellate court. Specifically, the pertinent portions of § 29-2317 provide:

(1) A prosecuting attorney may take exception to any *ruling or decision of the county court* made during the prosecution of a cause *by presenting to the court a notice of intent to take an appeal to the district court* with reference to the rulings or decisions of which complaint is made.

. . . .

(3) The prosecuting attorney shall then *file the notice in the district court* within thirty days from the date of final order and within thirty days from the date of filing the notice shall file a bill of exceptions covering the part of the record referred to in the notice. Such appeal shall be on the record.

(Emphasis supplied.)

After the separate juvenile court of Sarpy County filed its order dismissing the manslaughter charge, the State filed notice of its intent to appeal with the separate juvenile court. But contrary to the language of § 29-2317, the State chose to file the appeal not with the district court, but with the Nebraska Court of Appeals, explaining that in Sarpy County, the "[s]eparate [j]uvenile [c]ourt sits in the same stead as the [d]istrict [c]ourt" and "it

would be unreasonable to expect our exception proceedings to go to an equal court for ruling."

Section 43-2,106.01(2)(d), however, plainly states that the procedure outlined in § 29-2317 governs delinquency appeals by county attorneys when jeopardy has attached and that under § 29-2317, the appeal must be to the district court. Indeed, the State alleges jurisdiction under §§ 29-2317 to 29-2319. Had the Legislature intended that appeals under § 43-2,106.01(2)(d) be made to the Court of Appeals, § 43-2,106.01(2)(d) would have referred to §§ 29-2315.01 to 29-2316 instead of §§ 29-2317 to 29-2319. When the language of a statute is plain and unambiguous, no interpretation is needed, and a court is without authority to change such language. See *State v. Johnson*, 259 Neb. 942, 613 N.W.2d 459 (2000).

■ Further, reference to the county court in §§ 29-2317 to 29-2319 also applies to the separate juvenile court. In counties without a separate juvenile court, the county court sits as the juvenile court. See Neb. Rev. Stat. §§ 43-245(5) and 43-2,113(2) (Reissue 2004). This court recognized in *In re Interest of Jedidiah P.*, 267 Neb. 258, 673 N.W.2d 553 (2004), that both separate juvenile courts and county courts sitting as juvenile courts serve the same function. Thus, we treat separate juvenile courts as county courts under §§ 29-2317 to 29-2319.

■ The plain language of § 43-2,106.01(2)(d) requires the State to file its exception proceeding according to §§ 29-2317 to 29-2319. Because the State failed to fully comply with the statutory procedures outlined in § 29-2317, as incorporated by § 43-2,106.01, we lack jurisdiction to consider the State's exception.

## CONCLUSION

Because this case is not properly before this court, we dismiss the exception proceeding for lack of jurisdiction.

EXCEPTION DISMISSED.

WRIGHT, J., not participating.