Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/22/2018 08:15 AM CDT

In re Interest of Jordan B., a child
under 18 years of age.
State of Nebraska, appellee,
v. Jordan B., appellant.

___ N.W.2d ___

Filed June 22, 2018.    No. S-17-1092.

1. **Constitutional Law: Due Process: Appeal and Error.** Whether the procedures given an individual comport with constitutional requirements for procedural due process presents a question of law that an appellate court reviews independently of the lower court.

2. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.

3. **Lesser-Included Offenses.** Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law.

4. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

5. **Indictments and Informations.** In a criminal case, due process requires that an information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.

6. ____. Generally, to charge a defendant with the commission of a criminal offense, the information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime, or in language equivalent to the statutory terms defining the crime charged.

7. **Indictments and Informations: Lesser-Included Offenses: Notice.**
The defendant is by implication charged with the lesser offense when
charged with the greater offense, and due process is satisfied so long
as the nature of the crime charged was sufficient to give the defendant
notice that he or she could be convicted of the lesser-included offense.

8. **Juvenile Courts: Criminal Law.** Juvenile proceedings are not crimi-
nal prosecutions.

9. **Juvenile Courts: Due Process.** It violates due process to adjudicate
a juvenile, whose freedom could be curtailed, of committing acts con-
stituting a separate and distinct offense for which the juvenile was not
specifically charged.

10. **Sexual Assault.** Third degree sexual assault is a separate and distinct
offense from the crime of first degree sexual assault.

11. **Juvenile Courts: Double Jeopardy.** Jeopardy attaches in juvenile
delinquency proceedings when the juvenile court, as the trier of the
facts, begins to hear evidence.

12. **Statutes: Appeal and Error.** Appeals under specific statutory provi-
sions require strict adherence to the statute's procedures.

13. **Juvenile Courts: Jurisdiction: Appeal and Error.** An appellate court
lacks jurisdiction to consider the State's exceptions that fail to fully com-
ply with the statutory procedures outlined in Neb. Rev. Stat. § 29-2317
(Reissue 2016), as incorporated by Neb. Rev. Stat. § 43-2,106.01
(Reissue 2016).

Appeal from the County Court for Hall County: Timothy E.
Hoeft, Judge. Reversed and remanded with directions.

Mitchell C. Stehlik, of Lauritsen, Brownell, Brostrom &
Stehlik, P.C., L.L.O., for appellant.

Matthew C. Boyle, Deputy Hall County Attorney, for
appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and
Papik, JJ.

Heavican, C.J.

## I. NATURE OF CASE

In adjudication proceedings under Neb. Rev. Stat.
§ 43-247(2) (Reissue 2016), the only law violation alleged in
the petition was first degree sexual assault. After a hearing,

the juvenile court found that the State failed to prove the juvenile, Jordan B., committed acts constituting first degree sexual assault. Nevertheless, the juvenile court adjudicated Jordan based on its finding that he committed third degree sexual assault. The court believed that third degree sexual assault was a lesser-included offense of first degree sexual assault, and could thus be raised sua sponte. Because third degree sexual assault is not a lesser-included offense of first degree sexual assault, we reverse, and remand with directions.

## II. BACKGROUND

### 1. JUVENILE PETITION

The county attorney filed a petition asking the juvenile court to adjudicate Jordan as a juvenile who committed an act that would constitute a felony under the laws of this State pursuant to § 43-247(2). The felony alleged was first degree sexual assault as described in Neb. Rev. Stat. § 28-319 (Reissue 2016). The petition alleged that Jordan committed such acts on or between January 25 and November 8, 2016.

### 2. EVIDENCE AT HEARING

Jordan was 17 years old at the time of the hearing on the petition. He lived at home with his mother, a childcare provider (the provider), as well as with his 19-year-old brother, Tyler B. The provider operates a daycare out of her home, taking care of eight children. Jordan's alleged victim was a child in the provider's care, who was cared for Mondays through Fridays during the time period alleged in the petition. The victim's older brother also attended the daycare when he was not in school.

### (a) State's Evidence

The State's evidence consisted of the testimony of the victim, her mother, her older brother, and the investigator who interviewed Jordan regarding the allegations.

The victim was 5 years old at the time of the hearing. The victim testified that on at least one occasion, Jordan took her

to his room downstairs, shut the door, took off her shorts and underwear, had her lie down on the bed and put her legs up, and "sticked his wiener in my butt." The victim described her "butt" as "where I pee out and that's where I poop." She described "wiener" as "the part that boys pee out of." The victim said it hurt "really bad." The victim's testimony was inconsistent as to whether this had occurred once or twice, but she ultimately testified that it occurred only once.

The victim's brother was 8 years old at the time of the hearing. The brother testified the victim told him that while in Jordan's room, Jordan "stuck his wiener up her butt" and that Jordan told the victim she should not tell anybody. The brother testified that sometimes, the provider left the house during daycare hours to run errands. At such times, Jordan's grandmother usually would watch the children. The brother reported that sometimes Jordan or Tyler would watch the children, but that whenever Jordan and Tyler were home, either the provider or the grandmother was also there. However, when the victim's brother was recalled to testify after his mother's testimony, he stated that there were times when neither the provider nor the grandmother was at the daycare and Tyler was responsible for watching the children.

The victim's mother testified that on November 7, 2016, the victim told her that "Jordan tried to stick his wiener in her butt" and that Jordan had told the victim not to tell anybody. On cross-examination, the mother reiterated that the victim told her that Jordan had "tried" to "stick his wiener in her butt" and that the victim had never told her whether there was penetration. The mother testified that the victim told her this attempt occurred only one time.

The mother worked for the Department of Health and Human Services, investigating allegations of child abuse and neglect, including sexual abuse. She told her children that her "job is to help kids." She testified that she did not otherwise discuss her job with her children. She did sometimes discuss her work with her husband when the children were at home,

but she testified that she did not discuss things that were confidential. Thus, the mother affirmed that she had never discussed around her family the specific allegations of any cases she worked on.

The investigator testified that he interviewed Jordan on November 17, 2016. Jordan consistently denied the allegations against him. Jordan speculated that the victim could have been angry with him for correcting her at some point. Jordan further told the investigator that if something of that nature had occurred to the victim, it was someone else who committed the alleged acts.

### (b) Defense

Jordan testified in his own defense and presented the testimony of the provider, the grandmother, and Tyler. Jordan also entered into evidence the video of the interview of the victim conducted at a child advocacy center.

The video was offered by Jordan to show the victim stated that the assault occurred twice, contradicting her trial testimony. The video reflects that in her interview, the victim said that Jordan had "put his wiener in [her] butt" and that then she "kicked him because it was too hard." The victim described that this happened in Jordan's room after he had her lie down on her back in his bed and had taken her shorts and underwear off. At the time, the provider was not home and Jordan and Tyler were watching the children. The victim repeatedly said this occurred twice, once when she was 4 years old and once when she was 5 years old.

Jordan testified that he was never alone with the victim and denied committing any of the alleged acts. Jordan denied touching the victim in any way. Jordan testified that he was never home alone with the daycare children. When the provider was not there, either the grandmother or Tyler was in charge of the children. Though Jordan sometimes watched certain daycare children on the weekends, he never babysat the victim. Jordan explained that he told the investigator it must have been

someone else who had sexually assaulted the victim, based on things he had heard the victim's mother say. Due to a hearsay objection, Jordan did not elaborate.

The provider testified that she never left Jordan alone with the daycare children. She explained that it is part of the licensing requirements that she never leave the children alone with anyone younger than 18 years of age. When she has to leave the home while children are in her care, she leaves them with the grandmother, who is also a licensed daycare provider, or with Tyler.

The provider denied there was ever any occasion in which Jordan could have been alone in his bedroom with any of the daycare children. The provider stated that she, the grandmother, and Tyler had been trained to keep all eight children in sight at all times. Thus, there was never a time when she was home that the victim was out of her sight.

The provider described that when the children are outside, one adult is outside and another is inside the house, so that children running inside to use the restroom or get a snack are never unsupervised. Specifically, there was never a time when Jordan would have been in the house alone with a child while she was outside with other children. The provider testified that sometimes, the victim's mother shared with her the details of cases she worked on at the Department of Health and Human Services.

The grandmother testified that during the time in question, she had shut down her daycare due to her husband's health. Therefore, approximately three or four times a month, she was able to assist the provider in caring for the daycare children. The grandmother testified that there was no occasion when she worked at the daycare that Jordan was also present in the home.

Tyler testified that he helped with the daycare once or twice a week and that there was never a time when Tyler had primary care of the children that both Jordan and the victim were there. Also, when Tyler was home, while the provider

had primary care of the children, he never saw the victim go with Jordan into his room. He never saw Jordan interact with the victim at all.

### 3. MOTION TO AMEND PETITION AND ARGUMENT

Before closing arguments, the State asked the court to amend the petition to conform to the evidence. The county attorney explained, "I believe it more appropriate maybe — a charge in this case, based off the evidence that was elicited at trial, would be attempted sexual assault in the first degree." Jordan's counsel objected. The court never ruled on the motion, but stated its belief that the court had "authority sua sponte to consider less or [sic] included defenses in a trial to the bench."

The county attorney proceeded to argue that the State met its burden with regard to a charge of attempted first degree sexual assault. Jordan's attorney argued that the State had not met its burden for adjudication under the petition, noting, among other things, the lack of opportunity. The juvenile court took the matter under advisement.

### 4. TRIAL COURT'S ORDER

The court adjudicated Jordan as a child within the meaning of § 43-247(1). The court found that the State failed to meet its burden of proof with respect to the offense of first degree sexual assault as charged. Nevertheless, the court raised sua sponte the "lesser included offense" of third degree sexual assault, contrary to Neb. Rev. Stat. § 28-320(1) and (3) (Reissue 2016), a Class I misdemeanor. The court explained that it found the victim credible, that the State had proved sexual contact, that Jordan knew or should have known that the victim was incapable of appraising the nature of his conduct, and that the conduct did not cause serious personal injury to the victim.

Jordan appeals the adjudication.

## III. ASSIGNMENT OF ERROR

Jordan assigns and argues on appeal that the evidence was insufficient for the juvenile court to adjudicate him on the "lesser included offense of third degree sexual assault."

## IV. STANDARD OF REVIEW

[1] Whether the procedures given an individual comport with constitutional requirements for procedural due process presents a question of law that an appellate court reviews independently of the lower court.[1]

[2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[2] When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[3]

[3] Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law.[4]

## V. ANALYSIS

[4] We hold that the juvenile court plainly erred by adjudicating Jordan on a law violation that was not pled and was not a lesser-included offense of the crime pled. Plain error may be asserted for the first time on appeal or noted by the appellate court on its own motion.[5] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in

---

[1] See *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016).

[2] *In re Interest of K.M.*, 299 Neb. 636, 910 N.W.2d 82 (2018).

[3] *Id.*

[4] *State v. Dragoo*, 277 Neb. 858, 765 N.W.2d 666 (2009).

[5] *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003).

damage to the integrity, reputation, and fairness of the judicial process.[6]

The federal Constitution provides that under the Due Process Clause, no state "shall . . . deprive any person of life, liberty, or property, without due process of law."[7] Neb. Const. art. I, § 3, similarly provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, nor be denied equal protection of the laws." We have interpreted the Nebraska Constitution's due process and equal protection clauses to afford protections coextensive to those of the federal Constitution.[8]

[5] In a criminal case, due process requires that an information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.[9] We have said that an indictment or information meets all constitutional requirements (1) if it shows that the acts which the defendant is charged with committing amounted to a crime which the court had power to punish and that it was committed within the territorial jurisdiction of the court, (2) if it informs the defendant of the nature of the charge against him or her, and (3) if it constitutes a record from which it can be determined whether a subsequent proceeding is barred by the former adjudication.[10]

[6] Generally, to charge a defendant with the commission of a criminal offense, the information or complaint must allege each statutorily essential element of the crime charged,

---

[6] *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018).

[7] U.S. Const. amend. XIV, § 1.

[8] *Keller v. City of Fremont*, 280 Neb. 788, 790 N.W.2d 711 (2010).

[9] See *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

[10] *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984); *Cowan v. State*, 140 Neb. 837, 2 N.W.2d 111 (1942).

expressed in the words of the statute which prohibits the conduct charged as a crime, or in language equivalent to the statutory terms defining the crime charged.[11] Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient.[12] However, when the charging of a crime in the language of the statute leaves the information insufficient to reasonably inform the defendant as to the nature of the crime charged, additional averments must be included to meet the requirements of due process.[13]

[7] Due process does not generally require that the State explicitly set forth in the information the lesser-included offense of the crime charged.[14] The defendant is by implication charged with the lesser offense when charged with the greater offense, and due process is satisfied so long as the nature of the crime charged was sufficient to give the defendant notice that he or she could be convicted of the lesser-included offense.[15] We have accordingly held that in a bench trial, the court in its discretion may dismiss or acquit on the charge in the information but nevertheless convict the defendant of a lesser-included offense not explicitly set forth in the information.[16] Likewise, in a jury trial, the court on its own motion may instruct the jury as to lesser-included offenses not explicitly set forth in the information.[17]

---

[11] *State v. Van, supra* note 9.

[12] *Id.*

[13] *Id.*

[14] *State v. James*, 265 Neb. 243, 655 N.W.2d 891 (2003); *State v. Keup, supra* note 5; *State v. Foster*, 230 Neb. 607, 433 N.W.2d 167 (1988).

[15] See *State v. James, supra* note 14.

[16] See, *State v. James, supra* note 14; *State v. Keup, supra* note 5; *State v. Foster, supra* note 14.

[17] See, *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986); Neb. Rev. Stat. § 29-2025 (Reissue 2016).

But it is fundamental that no person may be convicted of a crime for which he or she was not charged.[18] The U.S. Supreme Court has said that doing so would be "'sheer denial of due process.'"[19] The Nebraska Court of Appeals has thus recognized plain error when the defendant was convicted of a crime which was not charged and which was not a lesser-included offense of the crime charged.[20]

[8] Juvenile proceedings are not criminal prosecutions.[21] Nevertheless, where the juvenile is in jeopardy of having his or her freedom curtailed, the notice protections guaranteed by due process are the same.[22] The U.S. Supreme Court held, in *In re Gault*,[23] that while the 14th Amendment does not require that the hearing at the adjudicatory stage conform with all the requirements of a criminal trial, where juvenile delinquency proceedings could result in curtailing the juvenile's freedom, the Due Process Clause requires application of "'the essentials of due process and fair treatment.'"

[9] Under *In re Gault*, a juvenile offender in a delinquency adjudication in which the juvenile's freedom could be curtailed has the same constitutional rights as an adult with regard to four specific due process rights: (1) to receive notice of the charges, (2) to be represented by counsel, (3) to confront and cross-examine witnesses, and (4) to invoke the privilege

---

[18] See *Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940).

[19] *Id.*, 310 U.S. at 96.

[20] *State v. Newman*, 5 Neb. App. 291, 559 N.W.2d 764 (1997), *overruled on other grounds, State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998).

[21] See, *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); *In re Interest of Heather R. et al.*, 269 Neb. 653, 694 N.W.2d 659 (2005); *In re Interest of Leo L.*, 258 Neb. 877, 606 N.W.2d 783 (2000).

[22] See, *In re Gault, supra* note 21; *In re Interest of Heather R. et al., supra* note 21; *In re Interest of Leo L., supra* note 21.

[23] *In re Gault, supra* note 21, 387 U.S. at 30. See *In re Interest of Leo L., supra* note 21. See, also, *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971).

against self-incrimination.[24] Regarding notice, the Court in *In re Gault* held that in juvenile proceedings, courts must comply with the due process requirements

> that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation. Due process of law requires notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet.[25]

We agree with numerous other courts that hold that under *In re Gault*, it violates due process to adjudicate a juvenile, whose freedom could be curtailed, of committing acts constituting a separate and distinct offense for which the juvenile was not specifically charged.[26]

[10] Third degree sexual assault is a separate and distinct offense from the crime of first degree sexual assault that was described in the petition. The juvenile court was incorrect in concluding that third degree sexual assault under § 28-320 is a lesser included offense of first degree sexual assault under § 28-319.[27]

---

[24] See *In re Interest of Leo L., supra* note 21.

[25] *In re Gault, supra* note 21, 387 U.S. at 33-34. See, also, *In re Interest of Juan L.*, 6 Neb. App. 683, 577 N.W.2d 319 (1998).

[26] See, *In Interest of Bryant*, 18 Ill. App. 3d 887, 310 N.E.2d 713 (1974); *In re Areal B.*, 177 Md. App. 708, 938 A.2d 43 (2007); *In Interest of J.T.*, 447 S.W.3d 212 (Mo. App. 2014); *State ex rel. Juv. Dept. v. Henson*, 97 Or. App. 26, 775 P.2d 325 (1989); *In re Interest of Becker*, 370 Pa. Super. 487, 536 A.2d 1370 (1988). See, also, *In re Davis*, 114 N.C. App. 253, 441 S.E.2d 696 (1994).

[27] See, also, *State v. Malcom*, 7 Neb. App. 286, 583 N.W.2d 45 (1998).

In 1993, we adopted a statutory elements test to determine whether an offense is a lesser-included offense of another.[28] Under this test, we look to the elements of the crime rather than the facts of the case, and to be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater offense without at the same time committing the lesser.[29]

First degree sexual assault as described in § 28-319(1) is as follows:

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

Penetration is defined in Neb. Rev. Stat. § 28-318(6) (Reissue 2016) as

> sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen.

Second and third degree sexual assault is set forth in § 28-320(1):

> Any person who subjects another person to sexual contact (a) without consent of the victim, or (b) who knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature of his or her conduct is guilty of sexual assault in either the second degree or third degree.

---

[28] *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993).

[29] See *State v. Putz*, 266 Neb. 37, 662 N.W.2d 606 (2003).

Sexual assault under § 28-320(3) is in the third degree "if the actor shall not have caused serious personal injury to the victim." Sexual contact is defined by § 28-318(5) as

> the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party. Sexual contact shall also include the touching of a child with the actor's sexual or intimate parts on any part of the child's body for purposes of sexual assault of a child under sections 28-319.01 and 28-320.01

Comparing the elements of § 28-319 to § 28-320, it is possible to have sexual penetration under § 28-319 without having sexual contact under § 28-320. As explained by the Court of Appeals in *State v. Schmidt*,[30] and reiterated by this court in *State v. Kibbee*,[31] third degree sexual assault requires that the touching be for the purpose of sexual arousal or gratification, while sexual assault in the first degree does not.

Jordan was adjudicated based on a finding that he had committed acts constituting third degree sexual assault. The petition described only first degree sexual assault, and the State never suggested any underlying law violation other than the lesser-included offense of attempted first degree sexual assault.[32]

The court specifically found that the State failed to prove beyond a reasonable doubt that Jordan committed first degree

---

[30] *State v. Schmidt*, 5 Neb. App. 653, 562 N.W.2d 859 (1997).

[31] *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012).

[32] See *State v. James, supra* note 14.

sexual assault as charged. Further, there is nothing in the court's order indicating a finding of acts constituting an attempt to commit first degree sexual assault. Although at one point in its order, the court found that the State met its burden of proving "Third Degree Sexual Assault contrary to 28-318," there is no third degree sexual assault in § 28-318. And the court clearly articulated that the elements of third degree sexual assault found in § 28-320 had been demonstrated beyond a reasonable doubt. The court found that the State had proved that Jordan had "sexual contact" with the alleged victim, which "did not cause serious personal injury."

This adjudication on the grounds of third degree sexual assault unfairly denied Jordan the opportunity to raise the defense that the alleged touching could not be reasonably construed as being for the purpose of sexual arousal or gratification of either party. The adjudication for neither a law violation specifically alleged in the petition nor a lesser-included offense of the violation alleged in the petition was a "'sheer denial of due process'"[33] constituting plain error.

The State concedes that it was plain error to adjudicate Jordan on third degree sexual assault. It suggests, however, that we may affirm the adjudication for the alternative reason that Jordan committed the implicitly charged lesser-included offense of attempted first degree assault. In essence, the State asserts that the juvenile court erred in failing to adjudicate Jordan on the grounds that he committed acts constituting attempted first degree sexual assault.

[11] But the State did not appeal the juvenile court's order. Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016) provides that an appeal in any case determining delinquency issues in which the juvenile has been placed legally in jeopardy may only be taken by exception proceedings pursuant to Neb. Rev. Stat. §§ 29-2317 to 29-2319 (Reissue 2016). The U.S. Supreme

---

[33] *Thornhill v. Alabama, supra* note 18, 310 U.S. at 96.

Court held in *Breed v. Jones*[34] that jeopardy attaches in juvenile delinquency proceedings when the juvenile court, as the trier of the facts, begins to hear evidence.

[12] Appeals under specific statutory provisions require strict adherence to the statute's procedures.[35] Section 29-2317 requires, among other things, that the prosecuting attorney appeal the county court judgment to the district court sitting as an appellate court. We held in *In re Interest of Sean H.*[36] that any reference to the county court in §§ 29-2317 to 29-2319 applies to the separate juvenile court and that we lack jurisdiction to consider the State's exceptions that fail to fully comply with the statutory procedures outlined in § 29-2317, as incorporated by § 43-2,106.01.

Despite the fact that Jordan was placed in jeopardy, the State did not adhere to the requirements of § 29-2317. It cannot circumvent the requirements of § 29-2317 by appealing to our de novo review.

The State misunderstands the nature of our de novo review of a juvenile adjudication under § 43-247(2). In a review de novo on the record, we reappraise the evidence as presented by the record and reach our own independent conclusions with respect to the matters at issue.[37] It is still a review, however, in which we determine whether to affirm or reverse the decision of the lower court.

We may, where appropriate, affirm the right result reached below for the wrong reason.[38] But the focus of our review in

---

[34] *Breed v. Jones*, 421 U.S. 519, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975).

[35] *In re Interest of Sean H.*, 271 Neb. 395, 711 N.W.2d 879 (2006).

[36] *Id*. See, also, *In re Interest of Rebecca B.*, 280 Neb. 137, 783 N.W.2d 783 (2010); *In re Interest of Lori S.*, 20 Neb. App. 152, 819 N.W.2d 736 (2012).

[37] *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984).

[38] See, e.g., *State v. Kolbjornsen*, 295 Neb. 231, 888 N.W.2d 153 (2016); *In re Trust Created by Cease*, 267 Neb. 753, 677 N.W.2d 495 (2004); *Ochs v. Makousky*, 249 Neb. 960, 547 N.W.2d 136 (1996); *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995).

an adjudication for a law violation is on whether as a factual matter the juvenile committed acts constituting a violation of the underlying criminal statute.[39]

Leaving aside the double jeopardy implications of affirming an adjudication on a lesser-included offense implicitly presented to but not found by the juvenile court,[40] it is not within the normal scope of our appellate review to make such a factual finding for the first time on appeal. We decline to do so here. Although a trial court in a bench trial may in its discretion consider all properly considered evidence relative to a lesser-included offense where the State fails to demonstrate a prima facie case on the crime charged,[41] we are not a trial court. The State cites to no authority supporting the proposition that an appellate court, even under a de novo review, may consider whether the juvenile has committed acts constituting a lesser-included offense where the State failed to demonstrate a prima facie case on the crime charged and the juvenile court did not adjudicate the juvenile on the lesser-included offense.

[13] We lack jurisdiction to consider the State's exceptions that fail to fully comply with the statutory procedures outlined in § 29-2317, as incorporated by § 43-2,106.01.

## VI. CONCLUSION

Because the juvenile court adjudicated Jordan on grounds for which he had no notice, in violation of the Due Process Clauses of the U.S. and Nebraska Constitutions, we reverse, and remand with directions to vacate the adjudication.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[39] See, e.g., *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007).

[40] See, *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *Breed v. Jones, supra* note 34; *U.S. v. Parker*, 989 F.2d 948 (8th Cir. 1993); *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000), *abrogated on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002). See, also, *In re Interest of Rebecca B., supra* note 36.

[41] See *State v. Keup, supra* note 5.