In re Interest of Teneko P., a child under 18 years of age. State of Nebraska, appellee, v. Nebraska Department of Health and Human Services, appellant.

730 N.W.2d 128

Filed April 3, 2007.   No. A-06-1030.

Milo Alexander, Special Assistant Attorney General, for appellant.

No appearance for appellee.

CARLSON, MOORE, and CASSEL, Judges.

MOORE, Judge.

## INTRODUCTION

The Nebraska Department of Health and Human Services (DHHS) appeals from a detention order entered by the Douglas County Separate Juvenile Court, which order placed temporary custody of Teneko P. with the Office of Juvenile Services (OJS) within DHHS and provided that OJS pay for the costs of Teneko's placement. On appeal, DHHS claims that the court erred in placing Teneko with OJS prior to adjudication and in directing OJS to pay for Teneko's care and detention.

## BACKGROUND

On August 14, 2006, the State filed a petition which alleged that Teneko was a child within the meaning of Neb. Rev. Stat. § 43-247(2) (Cum. Supp. 2006) in that he violated a law of the State of Nebraska and/or a municipal ordinance of the city of Omaha. Specifically, the petition alleged that on or about March 2006, Teneko subjected a minor child to sexual penetration, without the consent of the victim, or that Teneko knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of Teneko's conduct, in violation of Neb. Rev. Stat. § 28-319(1)(a) and (b) (Reissue 1995).

A detention hearing was held the same day, August 14, 2006. The State, Teneko and his counsel, and Teneko's parents were present. The State requested continued detention of Teneko. In an order entered August 16, the juvenile court found that the continued detention of Teneko was a matter of immediate and urgent necessity, for the protection of Teneko or the person or property of another, and that it would be contrary to Teneko's health and safety to be returned home. The juvenile court further

found that it would be in Teneko's best interests to be placed in the temporary custody of OJS until further order of the court and that the cost of care in excess of available insurance would be borne by DHHS. The court then ordered that Teneko be placed in the temporary custody of OJS and that Teneko be detained at the Douglas County Youth Center until further order of the court. The court also ordered that OJS might seek an appropriate placement of Teneko "that takes into account the present charge and that has no other children." The court then ordered Teneko's parents to pay the medical, dental, and hospital costs for Teneko to the extent that they had insurance to cover such costs; otherwise, the obligation would be that of OJS.

DHHS timely appeals from the detention order.

## ASSIGNMENTS OF ERROR

On appeal, DHHS asserts that the court erred (1) in placing Teneko with OJS prior to adjudication and (2) in ordering OJS to pay the costs of Teneko's care and detention.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of Tamantha S.*, 267 Neb. 78, 672 N.W.2d 24 (2003); *In re Interest of Chelsey D.*, 14 Neb. App. 392, 707 N.W.2d 798 (2005).

## ANALYSIS

DHHS argues that the court erred in committing Teneko to the custody of OJS, because Teneko had not yet been adjudicated. DHHS claims that there is no statutory authority which allows a juvenile court to commit a juvenile to OJS before a juvenile has been adjudicated. DHHS also claims that placing Teneko with DHHS was not permissible either, because the court found that Teneko required a "secure" detention placement, and DHHS argues that a juvenile may not be placed with DHHS prior to adjudication if the juvenile requires a secure placement. DHHS acknowledges that it would be responsible, generally speaking, for the costs of care for any juvenile placed in its custody; however, DHHS claims that because Teneko should not have been

placed with OJS or DHHS, DHHS is not liable for the costs of Teneko's care. DHHS asserts that rather, the juvenile court should have ordered Douglas County to be responsible for the costs of Teneko's care, because when the Nebraska Juvenile Code or the Health and Human Services, Office of Juvenile Services Act preclude placement with DHHS or OJS, the county is generally responsible for such costs.

The facts of this case are not in dispute, but, rather, we are presented with an issue of statutory interpretation. The question before us is whether the juvenile court was authorized to place Teneko in the temporary custody of OJS. This requires an examination of statutory provisions from the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Reissue 2004 & Cum. Supp. 2006), and the Health and Human Services, Office of Juvenile Services Act, Neb. Rev. Stat. §§ 43-401 to 43-423 (Reissue 2004 & Cum. Supp. 2006), the relevant portions of which are provided below.

*Relevant Statutes of Nebraska Juvenile Code.*

Section 43-254 provides where a juvenile court may place or detain a juvenile before he or she is adjudicated, stating in relevant part:

> Pending the adjudication of any case, if it appears that the need for placement or further detention exists, the juvenile may be (1) placed or detained a reasonable period of time on order of the court in the temporary custody of either the person having charge of the juvenile or some other suitable person, (2) kept in some suitable place provided by the city or county authorities, (3) placed in any proper and accredited charitable institution, (4) placed in a state institution, except any adult correctional facility, when proper facilities are available and the only local facility is a city or county jail, at the expense of the committing county on a per diem basis as determined from time to time by the head of the particular institution, or (5) placed in the temporary care and custody of [DHHS] when it does not appear that there is any need for secure detention.

Section 43-290 describes who is responsible for the costs of care and treatment of a juvenile as well as the payment procedure, stating in relevant part:

It is the purpose of this section to promote parental responsibility and to provide for the most equitable use and availability of public money.

Pursuant to the petition filed by the county attorney in accordance with section 43-274, whenever the care or custody of a juvenile is given by the court to someone other than his or her parent, which shall include placement with a state agency, or when a juvenile is given medical, psychological, or psychiatric study or treatment under order of the court, the court shall make a determination of support to be paid by a parent for the juvenile at the same proceeding at which placement, study, or treatment is determined or at a separate proceeding. Such proceeding, which may occur prior to, at the same time as, or subsequent to adjudication, shall be in the nature of a disposition hearing.

. . . .

If the juvenile has been committed to the care and custody of [DHHS], the department shall pay the costs for the support, study, or treatment of the juvenile which are not otherwise paid by the juvenile's parent.

If no provision is otherwise made by law for the support or payment for the study or treatment of the juvenile, compensation for the support, study, or treatment shall be paid, when approved by an order of the court, out of a fund which shall be appropriated by the county in which the petition is filed.

*Relevant Statutes of Health and Human Services, Office of Juvenile Services Act.*

Section 43-403 provides definitions for certain terms in the Health and Human Services, Office of Juvenile Services Act, including the following:

(2) Committed means an order by a court committing a juvenile to the care and custody of [OJS] for treatment;

. . . .

(4) Evaluation means assessment of the juvenile's social, physical, psychological, and educational development and needs, including a recommendation as to an appropriate treatment plan;

. . . .

(6) Placed for evaluation means a placement with [OJS] or [DHHS] for purposes of an evaluation of the juvenile; and

(7) Treatment means type of supervision, care, confinement, and rehabilitative services for the juvenile.

Section 43-413 provides as follows:

(1) A court may, pursuant to section 43-281, place a juvenile with [OJS] or [DHHS] for an evaluation to aid the court in the disposition.

. . . .

(3) All juveniles shall be evaluated prior to commitment to [OJS]. The court shall not commit such juvenile to the temporary custody of [OJS] prior to disposition. The office may place a juvenile in residential or nonresidential community-based evaluation services for purposes of evaluation to assist the court in determining the initial level of treatment for the juvenile.

(4) During any period of detention or evaluation prior to disposition:

(a) Except as provided in subdivision (4)(b) of this section, the county in which the case is pending is responsible for all detention costs incurred before and after an evaluation period prior to disposition, the cost of delivering the juvenile to the facility or institution for an evaluation, and the cost of returning the juvenile to the court for disposition; and

(b) The state is responsible for (i) the costs incurred during an evaluation unless otherwise ordered by the court pursuant to section 43-290 and (ii) the preevaluation detention costs for any days over the first ten days from the date the evaluation is ordered by the court.

(5) [OJS] and [DHHS] are not responsible for predisposition costs except as provided in subdivision (4)(b) of this section.

*Application of Relevant Statutes.*

■ In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to ascertain the meaning

of statutory words which are plain, direct, and unambiguous. *McKenzie v. City of Omaha*, 14 Neb. App. 398, 708 N.W.2d 286 (2006). The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *In re Estate of Eickmeyer*, 262 Neb. 17, 628 N.W.2d 246 (2001).

We note as an initial matter that although the juvenile court "placed" Teneko in the temporary custody of OJS, the proper language would have been to "commit" Teneko to the custody of OJS, and we read the court's order as though Teneko was committed to the temporary custody of OJS. See, § 43-403; *In re Interest of Marie E.*, 260 Neb. 984, 621 N.W.2d 65 (2000).

Pending adjudication, a juvenile court may place or detain a juvenile, as described in § 43-254. We note that a commitment to OJS is not specifically listed in § 43-254 as it is in the section of the juvenile code which provides placement options for juvenile violators or juveniles in need of special supervision after adjudication, see § 43-286(1)(b). We also note that the placement options in § 43-254 which discuss placing a juvenile in the temporary "custody" of another entity are found in subsection (1), stating that the juvenile may be placed in the temporary custody of either the person having charge of the juvenile or some other suitable person, or subsection (5), stating that the juvenile may be placed in the temporary care and custody of DHHS. Moreover, § 43-413(3) of the Health and Human Services, Office of Juvenile Services Act indicates that a juvenile shall not be committed to the temporary custody of OJS prior to disposition. Section 43-413(3) additionally states that a juvenile may not be committed to OJS until he or she has undergone an evaluation, and there is no indication from the record that Teneko had undergone such evaluation before the juvenile court committed him to the temporary custody of OJS. In view of these statutory provisions, we find that it was error for the court to place Teneko in the temporary custody of OJS.

We next address whether the court erred in ordering OJS to be responsible for the costs of Teneko's detention. Generally, DHHS is responsible for the support, study, or treatment costs

of a juvenile which the juvenile's parents cannot pay, when the juvenile has been placed in the care and custody of DHHS. See § 43-290. We have decided above that the court erred in placing Teneko in the custody of OJS. Moreover, it appears that the court could not have placed Teneko in the custody of DHHS such that DHHS might still be responsible for the costs of Teneko's detention. Section 43-254(5) provides that a juvenile court may place a juvenile in the temporary care and custody of DHHS prior to adjudication "when it does not appear that there is any need for secure detention." The juvenile court in this case ordered that Teneko continue to be detained in the Douglas County Youth Center and that OJS might seek a placement for Teneko "that takes into account the present charge and that has no other children," which order makes it appear that Teneko required secure detention. Thus, Teneko could not have been placed in the custody of DHHS such that DHHS would be responsible for the costs of Teneko's detention. The court erred in ordering OJS to pay the costs of Teneko's detention.

## CONCLUSION

The juvenile court erred when it placed Teneko in the temporary custody of OJS and when it ordered OJS to pay for the costs of Teneko's detention. The juvenile court's order of detention is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.